Forrish *v.* Kennedy, Appellant.

Argued April 14, 1954.   Before STERN, C. J.,
STEARNE, JONES, BELL, CHIDSEY, MUSMANNO and AR-
NOLD, JJ.

*Frank J. Gormley,* with him *Martin B. Gormley,* for appellants.

*Andrew Hourigan, Jr.,* with him *Leo W. White, Allan M. Kluger* and *George A. Spohrer,* for appellee.

OPINION BY MR. JUSTICE CHIDSEY, May 24, 1954:

This appeal arises out of an action in equity tried upon a case stated to compel the trustees of the Anthracite Health and Welfare Fund to pay the plaintiff a retirement pension out of the fund.

The relevant facts as agreed to by the parties are as follows: In 1909 the plaintiff, Vincent Forrish, a miner in the anthracite coal industry in Pennsylvania, became a member of the United Mine Workers of America, District 1, after he fulfilled the necessary qualifications and paid the required initiation fee. From that time until the present he has continuously maintained such membership by paying the necessary dues and assessments and by otherwise meeting the obligations of membership. From on or about June 17, 1947 to June 23, 1950 he held a Restaurant Liquor License for certain premises in Luzerne County, Pennsylvania.

The constitution of the International Union, United Mine Workers of America, effective November 1, 1948, in Article XIV, Section 2 contains a provision that persons engaged in the sale of intoxicating liquors shall not be eligible for membership. Notwith-

standing the fact that he engaged in the sale of intoxicating liquors, of which the local officers of the Union were well aware, he continued to pay the requisite dues to such officers until June, 1952 in order to maintain his membership in the Union.

The stipulation between the parties further recites that by an agreement entered into on June 7, 1946 between the International Union and Districts 1, 7 and 9, United Mine Workers of America, parties of the first part, and the Anthracite Operators, parties of the second part, an irrevocable trust was created, known as the Anthracite Health and Welfare Fund, with funds thereafter provided by the signatory anthracite operators. This agreement and three supplemental agreements provided that the fund was to be managed by three trustees. The several agreements provided that the fund was to be used for making payments to members of the United Mine Workers of America, and their dependents and survivors with respect to wage loss and other related welfare purposes and for the establishment of a separate fund to be used for pensions or annuities. The agreements also provided that "... *Subject to the stated purposes of the Fund,* the Trustees shall have full authority with respect to questions of coverage and eligibility, priorities among classes of benefits, amounts of benefits, methods of providing or arranging for provisions of benefits and all related matters.". (Emphasis supplied).

On July 26, 1948 the defendants, Thomas Kennedy, Robert L. Birtley and Mart F. Brennan, as the duly appointed trustees of the fund, acting in pursuance of the authority vested in them by the several agreements, adopted a resolution which, as amended on April 18, 1949, reads as follows: "Be It Further Resolved, that a pension of One Hundred Dollars

($100.00) per month shall be paid, subject to amendment or modification at any time as experience in the operation of the Fund may dictate or require, to each eligible and qualified member of the United Mine Workers of America, Districts 1, 7 and 9, who, on June 1st, 1946, attained or thereafter attains the age of 60 years and who has served 20 years in the Anthracite Coal Industry in the State of Pennsylvania and who has retired from service in the Anthracite Coal Industry in the State of Pennsylvania on a date subsequent to June 1st, 1946; . . .".

On July 26, 1948 the defendants, as trustees, in order to effectuate the payment of pensions in accordance with the terms and conditions of the foregoing resolution, inter alia, adopted the following rule as to proof of membership: "Membership in the United Mine Workers of America must be certified to by the Local Union and confirmed by the District in accordance with rules and laws of the United Mine Workers of America. The International Union shall have final say in all matters pertaining to membership in the United Mine Workers of America.".

On July 17, 1950 the plaintiff, having sold his liquor business and having returned to his former occupation a short time before, became 60 years of age. Some two months later he was compelled to retire from the anthracite coal industry due to the effects of an injury which he had previously sustained while working as a miner. In November, 1950 plaintiff applied to the trustees, defendants, for his pension of $100 a month. After due investigation, his membership in the United Mine Workers of America was certified to by the Local Union and confirmed by District 1 as set forth in the following letter from the Secretary-Treasurer of the District to the Fund: "In accordance with your request of January 3, 1951, an investi-

gation was made of the above case and the following facts have been developed: The applicant began working in the anthracite mining industry in 1909, and worked continuously without interruption until the third quarter of 1947, when he was compelled to leave his employment because of ill health. He attempted to return to his regular occupation in the first quarter of 1948, but was unable to do the work required. He was engaged in the saloon business for approximately two years during which time he maintained his membership through the payment of dues. A considerable time prior to his making application for pension he had sold the business and had returned to the industry. He returned to the mines in July 1950, when he took up employment at the West End Colliery, Duryea Anthracite Coal Company. A review of all the information points to the fact there is no question of membership involved in this case, therefore, it is recommended that the Welfare Fund will give his claim for pension favorable consideration and make the pension available to him.".

The defendants refused to pay plaintiff any pension for the reason that in the exercise of their discretion as trustees of the Fund they had determined that the plaintiff was not a member in good standing of the United Mine Workers of America when he applied for the pension, solely because he had been engaged in the sale of intoxicating liquors and therefore he did not qualify for such pension.

The court below ruled that the plaintiff had satisfied the requirements of eligibility as laid down by the trustees of the fund and therefore ordered them to pay the plaintiff a retirement pension. The defendants filed exceptions to the findings of fact and conclusion of law of the chancellor which were dismissed by the

court en banc and judgment was entered for the plaintiff. From that final decree the defendants appeal.

Directing our attention to the trust instrument, it is provided therein that the trustees have "full authority" regarding questions of eligibility. Acting in accordance with this authority, they formulated four requirements that one must meet in order to qualify for a pension: (1) At least 20 years of service in the anthracite industry; (2) the attainment of 60 years of age or more; (3) retirement from work after June 1, 1946; (4) membership in the United Mine Workers of America. The standard or norm prescribed by the trustees to guide them in ascertaining who were qualified and eligible members of the Union was certification of membership by the Local Union and confirmation by the District in accordance with the rules and laws of the United Mine Workers of America with the International being the final arbiter of this question. As was set forth in the case stated, the plaintiff's membership was certified to by the Local Union and was confirmed by the District, both of which were fully cognizant of plaintiff's participation in the liquor business. By accepting plaintiff's membership dues the Union evidently elected to waive the prohibition against engaging in the sale of intoxicating liquors and its action has been in no way impeached by the International.

Despite the plaintiff's compliance with the conditions promulgated by the trustees, they deny him a pension. Their reason for so doing is that by the terms of the trust they are clothed with unlimited discretion and even if they act outside the bounds of a reasonable judgment, they are beyond the reach of judicial inquiry so long as they act in a state of mind in which it was contemplated by the settlors that they would act.

While we cannot subscribe to appellants' argument that the words "full authority" are synonymous with the terms "absolute discretion" or "unlimited discretion", even such terms do not give a trustee unfettered discretion in all instances. Resort must be had to the instrument itself to define the limits of a trustee's powers, for much will depend on whether there is any standard by which the trustee's conduct can be judged: Scott on Trusts, Vol. 2, §187. Secondly, if the term "full authority" is susceptible of two different interpretations, the construction most favorable to the pensioner must be the one adopted: *Diskin v. Philadelphia Police Pension Fund Association,* 367 Pa. 273, 278, 80 A. 2d 850.

Even though full authority was reposed in the trustees to determine questions of eligibility, the settlors provided that it was to be exercised "Subject to the stated purposes of the Fund . . .". The avowed purposes of the trust were to ameliorate and compensate members of the United Mine Workers of America for wage losses and to provide a pension fund in case of retirement. In accordance with the defendants' own standards, the plaintiff was a duly certified member in good standing of that organization and, as such, one of the intended beneficiaries of the trust. If the appellants can now assert some omnipotent power to strip him of his benefits after he has complied with each and every condition, then the purposes of the trust can be readily frustrated at the whim or caprice of the trustees. That the settlors of the trust never intended to confer such powers is patent and a court of equity can always intervene to control such an unreasonable exercise of discretion: In *Brown's Appeal,* 345 Pa. 373, 379, 29 A. 2d 52, we said that "While a court cannot control the discretion conferred upon a trustee it may compel him to exercise it in good faith

and within the bounds of a reasonable judgment, and it may also interpose where he fails to use his judgment at all because of a mistaken view, either of fact or law, as to the extent of his powers or duties: . . .". See also *Damiani v. Lobasco,* 367 Pa. 1, 7, 79 A. 2d 268.

The decree is affirmed at the cost of appellants.