Shore, Appellant, *v.* Bell Telephone Company of Pennsylvania, Appellant.

446

Argued April 23, 1956.

Reargued November 26, 1956. Before STERN, C. J., JONES, BELL, CHIDSEY, MUSMANNO and ARNOLD, JJ. Reargued April 24, 1957. Before JONES, C. J., BELL, CHIDSEY, MUSMANNO, ARNOLD, JONES and COHEN, JJ.

further reargument refused July 16, 1957.

*J. B. H. Carter,* with him *John B. King* and *Pepper, Bodine, Frick, Scheetz & Hamilton,* for defendant.

*S. Regen Ginsburg,* with him *H. P. Abramson* and *Jay B. Leopold,* for plaintiff.

OPINION BY MR. JUSTICE BELL, June 3, 1957:

Plaintiff, who was the estranged wife of a deceased employee of defendant, brought a suit in assumpsit to recover *additional* Sickness Death Benefits under defendant's Plan for Employees' Pensions, Disability Benefits and Death Benefits. The employee died of sickness July 7, 1952. Plaintiff, who was his widow, was not living with him at the time of his death and had not been living with him since October, 1945, but was entitled to support of $20 a week under a court order which she obtained on February 26, 1946. The decedent also left a mother to whom he had been contributing $6 a week. There were no children or other dependent relatives.

Employees' Benefit Committee of the defendant, which is charged with the administration of the Plan, awarded plaintiff a Sickness Death Benefit in the sum of $1,044, representing one year's payment at $20 a week, and awarded to decedent's mother $313.20, representing a year's payment at the rate of $6 a week. Plaintiff-wife claimed there should be awarded to her under Section 7 (4) (a) the *maximum* amount, to wit, $6,180, which would be payable under the Plan to a surviving wife who was living with her employee-husband at the time of his death, and that nothing should be awarded to the employee's mother.

The lower Court reversed the Committee and awarded to plaintiff-wife under Section 7(4) (a) four-fifths of the *maximum* amount of $6,180, which would be payable under the Plan to a surviving wife *who was living with her employee-husband at the time of his death,* and

awarded one-fifth thereof to the employee's mother. From the judgment entered sur this order, Bell Telephone Company and plaintiff have each taken an appeal.

Plaintiff-wife has no vested rights, indeed she has no rights of any kind or to any amount, except what she is given under the Plan. Her rights arose, if at all, only upon the death of her husband (decedent-employee), and then only if she proved that she came within the terms and conditions of the Plan. Defendant's Plan has been in existence since 1913 and has always operated in the manner in which it was operated in the instant case. It is noncontributory on the part of the employees, all benefits and pensions being paid by defendant.

The pertinent provisions of defendant's Plan for sickness-death benefits to its employees are as follows: "Section 1. Undertaking. The Bell Telephone Company of Pennsylvania undertakes *in accordance with these Regulations,** to provide for the payment of definite amounts to its employees when they are disabled by accident or sickness or when they are retired from service, or, in the event of death, to their dependent relatives. . . . Section 3. Committee. 1) There shall be a Committee of five (5) appointed by the Board to serve during its pleasure, which Committee shall be called the Employees' Benefit Committee. This Committee shall be charged with the administration of the Plan. 2) The Committee shall have the specific powers elsewhere herein granted to it and shall have such other powers as may be necessary in order to enable it to administer the Plan. 3) It shall determine conclusively for all parties all questions arising in the administration of the Plan. . . .

---

* Italics throughout, ours.

"4) The persons who may be beneficiaries of the Accident or Sickness Death Benefit or of payments on the death of a pensioner hereunder are limited to the wife (or husband) and the dependent children and other dependent relatives of the deceased. *The amount to be paid in each case* and the beneficiary or beneficiaries who shall receive the same, and the share which each shall receive, *shall be determined by the Committee,* subject to the following provisions and to the provisions of Paragraphs 3 and 5 of this Section. (a) . . . in the event of death by sickness, the *maximum* Sickness Death Benefit specified in Paragraph 2 of this Section, *shall be* paid, subject to the provisions of subparagraph (c) of this Paragraph 4, to the wife of the deceased employee *if living with him at the time of his death;* . . . If the employee leaves both wife (or husband) and a child or children, as here described, the Committee, in its discretion, may pay the Death Benefit to or for any one or more of such possible beneficiaries in such portions as it may determine.

"b) If there be no beneficiary of the deceased employe as described above in sub-paragraph (a), then, . . . in the event of death by sickness, a Sickness Death Benefit *in an amount not to exceed the amount specified in Paragraph 2* of this Section, *may be* paid to any other person or persons who may be beneficiaries, as defined in the first sentence of this Paragraph 4, and be receiving or entitled to receive support from the deceased employee at the time of his death.

"Subject to the limitations expressed in this sub-paragraph (b) the Committee shall have full authority to determine *to whom payments shall be made and the amount of the payments,* taking into consideration the degree of dependency and such other facts as it may deem pertinent."

The key words in this case are "to the wife of the deceased employee *if living with him at the time of his death.*" Appellant in the court below interpreted these clear words to mean "If living with him at the time of his death, or if living separate and apart from him without her fault or without her consent." Such an interpretation distorts and violates the clear language of this Plan. Under the language of the Plan it is clear as crystal that a wife who is not living with her husband at the time of his death, and has not been living with him for over seven years prior to his death, is not entitled to the *maximum* Sickness Death Benefit under the provisions of the Plan. A wife-plaintiff falls, as does the decedent's mother, within the clear language of Section 7 (4) (b), which provides for cases where there is no wife of the deceased employee living with him at the time of his death. In such an event, Section 7 (4) (b) clearly provides that "a Sickness Death Benefit in an amount not to exceed the amount specified in Paragraph 2 of this Section, [to wit: $6,-180.00] *may be paid* to any other person or persons who may be beneficiaries [under the Plan] . . . and be receiving . . . support from the deceased employee at the time of his death." It further provides that the Committee shall have full authority to determine which beneficiaries are entitled and the amount to which each may be entitled "taking into consideration the degree of dependency and such other facts as it may deem pertinent."

Moreover plaintiff's construction of this Plan would not only violate the clear language of the written Plan to which neither plaintiff nor her deceased husband contributed a cent, but would require the defendant, or the Employees' Benefit Committee, to investigate every case where a wife was not living with her husband at the time of his death, and to decide why the

wife was not living with her husband, and which party was to blame for the separation. Such an investigation and determination is often difficult for courts to make, and is so unrealistic that it is clear it was not intended to be required of the defendant in this Plan.

To summarize, if a wife was living with her deceased husband at the time of his death, she would be entitled, under the clear language of the Plan, to *maximum* Sickness Death Benefits. If there was no wife, or if she was not living with him at the time of his death, then the Committee had "full authority to determine which beneficiaries (as defined in the first sentence of Paragraph 4) should receive payments and the amount of money payable to each," provided that in no event the total payments could exceed the maximum Sickness Death Benefit.

While reasonable men may sincerely differ as to the amount of money which in good conscience should be paid to this wife and to the decedent's mother, we cannot say that the Committee to whose judgment and discretion this question was specifically left committed an error of law or a manifest abuse of discretion.

The judgment of the lower court is reversed; and judgment is here entered for defendant.

---

DISSENTING OPINION BY MR. JUSTICE MUSMANNO:

After 36 years of employment with the Bell Telephone Company in Philadelphia, Maurice T. Shore died on July 29, 1952, leaving a good record as a workman and a poor one as a husband. He beat his wife and threatened her life, on one occasion taunting her to "put your head in the oven twice and bring it out once." He consorted with other women and when his wife objected to his immoral conduct he invited her "to get the Hell out." His meretricious behavior continuing, Mrs. Shore left their common domicile on October 16,

1945. She returned shortly thereafter seeking to effect a reconciliation, but he repulsed her. When, one day, she sought to enter their apartment in order to obtain her personal effects, he barred her entrance, leaving her belongings on the outer doorstep. Mrs. Shore never relinquished efforts to rejoin her husband, and it cannot be questioned that had she instituted divorce proceedings against him, she would have been entitled under the law to a decree *a vinculo matrimonii* on the grounds of malicious desertion.

This brief narrative of the shipwreck of the matrimonial bark of Maurice and Elizabeth Shore is vital in considering the present case not because of any legal significance per se, but because of a clause in the Bell Telephone Plan of Employees' Pension, Disability Benefits and Death Benefits, Section 7, subsection 4(a) of which provides that "in the event of . . . death by sickness, the maximum Sickness Death Benefit . . . shall be paid . . . to the wife of the deceased employee if living with him at the time of his death . . ."

Upon Maurice Shore's death, Mrs. Shore applied for the maximum death benefit payable under the Plan, namely, $6,180. The Bell Telephone Company rejected the claim, asserting that since Mrs. Shore was not living with her husband at the time of his demise, she could not qualify under Section 7, subsection 4(a) above cited. However, the Company conceded some payment was in order under Subsection 4(b) which provided that if there was lacking sole beneficiaries under Subsection 4(a), benefits would go to any other person or persons entitled to receive support from the decedent before his death.

For nine years prior to July, 1952, Maurice Shore was paying his wife, under a Court order, the sum of $20 per week for maintenance. He also had contributed $6 per week towards the support of his mother. The

Employees' Benefit Committee of the Company, ruling that Mrs. Shore was disqualified as a sole beneficiary under Subsection 4(a), proceeded then to administer benefits under Subsection 4(b), awarding $1,044 to the widow in installments of $87 per month and $313.20 to the decedent's mother in installments of $26.10 per month.

Mrs. Shore was dissatisfied with this decision and instituted an action in assumpsit against the Bell Telephone Company for the total sum of $6,180 payable under 4(a). Court of Common Pleas No. 4 of Philadelphia ruled that the Committee was justified in refusing payments under 4(a) since Mrs. Shore was not living under her husband's roof when he died, but it decided further the Committee erred, under 4(b), in awarding total benefits of only $1357.20. The Court declared that the Committee should have distributed the entire amount of the death benefits, to wit, $6,180, using the same ratio (4 to 1) that it had adopted in distributing the $1,357.20.

I believe the Court below was correct in holding that Subsection 4(b) called for payment of the entire amount of the maximum death benefits and that the Committee had abused its discretion in awarding a lesser sum. The Bell Telephone Company's Pension and Benefits plan under consideration is not, as might be supposed, a unilateral arrangement, with the Company bestowing gratuities among its employees and their dependents. Although supposedly financed by the Company alone, the Death Benefits Plan actually represents an enterprise in which the whole consuming public participates. When the Pennsylvania Public Utilities Commission permitted the Bell Company to increase its rates it decided, inter alia, that operating expenses included costs for maintaining plans for pensions, accident disability benefits, sickness disability benefits and death

benefits.* To allow the Committee not to pay less than the total payment authorized under the Plan amounts to a deception practised on the consumers as well as the employees.

The consumers were assessed certain amounts not only for services rendered to them but for the retirement, disability and death benefits set up for employees. The employees entered and remained in the employment of the company under a contract which guaranteed them or their beneficiaries certain retirement, disability, and death benefits. Those advantages cannot be taken away by the company. While the Employees' Benefit Committee must perforce be allowed some discretion in the performance of its duties, it may not depart from the equitable and fair standards set up by the Plan, taken as a whole.

However, though the Court below properly decided that under Subsection 4(b) of the Plan the Company was required to pay the total amount of $6,180, it improperly concluded that the widow could not recover under Subsection 4(a): "It is not necessary for us to determine the meaning of the phrase 'living with' as used in defendant's Plan. The real question is, did the Committee in administering the Plan act in good faith when they found that plaintiff was not 'living with' her husband at his death. It is our opinion that the Committee did act in good faith, regularly, and upon the merits of this question, and that its decision should not be attacked or set aside by us." I believe the Court erred in this observation. The question of good or bad faith is not involved here at all. What we have before us is a question of realities. A tribunal cannot rule that 2 and 2 make 6 and be excused from responsibility for so bizarre a conclusion on the basis that it honestly

---

* *Pittsburgh v. Pennsylvania PUC, Appellant,* 370 Pa. 305.

believed that its arithmetic was blemishless. The phrase "living with", as found in Subsection 4(a) must be placed over the picture produced by all the events in the case and then evaluated against the background of those events. The lower Court failed to do this.

It is fundamental law that goes back to the first prehistoric manifestation of inchoate justice that no one shall reap a benefit from a malefaction, and this rule applies whether the malefactor be alive or speaks from the grave. Maurice Shore had a legal duty to support his wife when alive and a posthumous obligation to assure her all benefits accruing to her as his legal mate. When the Bell Telephone Company Benefits Plan went into effect, Mrs. Shore immediately became a beneficiary thereof as much as if she punched the time clock with her husband each morning and worked at his side all day. Her right to death benefits was as much a chose in action as his right to pension. All these prerogatives were inextricably woven into the contract of employment. So long as Mrs. Shore remained the decedent's spouse and maintained herself legally and morally in that position, he could not deprive her of benefits rising from the contract and ensuing Plan of Death Benefits. If Mrs. Shore had abandoned her husband, or had refused him her society, companionship and conjugal affection, she would have cut herself off from the Plan. She, however, did not do this. The facts indeed are all to the contrary. The rectitude of her conduct is a matter of judicial determination. Maurice Shore was ordered to pay his wife $20 per week because she was his wife and because *he* would not live *with her*.

The decision in *Auch Estate*, 174 Pa. Superior Ct. 406 illustrates the principle of law involved here. In that case the wife left the marital abode for a cruise to Bermuda "for health reasons." While away, her husband unsuccessfully attempted to obtain a divorce. Hus-

band and wife never lived together again after that. On the death of Mr. Auch, Mrs. Auch filed in Orphans' Court a petition for widow's exemption under the Fiduciaries Act of April 18, 1949, P. L. 512, §211. Her petition was contested on the ground that since she had left her husband, she had forfeited the widow's exemption. The Superior Court affirmed the awarding of widow's exemption, saying: ". . . the record fails to reveal any evidence that appellee [Mrs. Auch] at any time left the matrimonial habitation with an intent not to return.

"From the circumstances surrounding appellee's departure on a two weeks' cruise to Bermuda it is difficult to perceive how appellants can infer an intent on the part of appellee to withdraw from or abandon the marital domicile and terminate the family relationship. . . . Upon her return from the trip to Bermuda appellee found that her husband had left their common domicile, taking all his personal belongings, without explanation or justification. He never returned to the marital abode thereafter although he had access thereto at all times. . . .

"Under these circumstances the cessation of the family relationship must be considered as having been caused solely by the husband. *Where the family relationship is broken through the fault of the husband, the widow does not forfeit her right of exemption.*" (Emphasis supplied). Paraphrasing what was said in the *Auch* case, I would say here that where the family relationship is broken through the fault of the husband, the widow does not forfeit her rights under the Bell Plan of Employees' Pension, Disability Benefits and Death Benefits.

The case of *Sheaffer v. Penn Dairies,* 161 Pa. Superior Ct. 583 is another one which throws into base re-

lief the principle here being enunciated. Section 307 of The Pennsylvania Workmen's Compensation Act, 77 PS §562, provides compensation for the widow of a deceased employee if she "was living with her deceased husband at the time of his death, or was then actually dependent upon him." Mr. and Mrs. Sheaffer were not actually living with each other when he died as the result of an accident in the course of his employment. They had not yet set up a common domicile. They had been married less than two months when his death occurred and for domestic reasons, entirely compatible with reciprocal loyalty and devotion, each had continued to live in the separate rooms in the houses in which they had dwelt prior to the marriage. The Board of Compensation concluded that since the husband and wife did not share the same house they were not living together under contemplation of The Pennsylvania Workmen's Compensation Act. The Superior Court properly held to the contrary: " 'Living with' does not always import physically dwelling together in the same house. (citing cases) Whether parties are 'living with' each other is a question of fact, but it is to be determined, not by consulting only one facet of the relationship, but by inspecting the whole picture. . . .

"The board, as its finding indicates, construed the phrase too narrowly, and having discovered the one fact that the parties did not occupy the same living quarters, rested its finding that they were not living together solely upon that circumstance. If the board had found the facts indicated by the evidence which we have recited, assuming that claimant's testimony was credible, we believe it might have inferred the ultimate fact that claimant lived with the deceased. Its error consisted in concentrating its attention upon one item of the proof, ignoring the rest of the testimony, and without finding the specific facts, reached a conclusion

which upon its face indicates failure to consider all the evidence."

There are two appeals in this case, the widow claiming that she is entitled to the full amount of $6,180, the defendant Bell Telephone Company asserting it is required to pay out only a total of $1357.20, to both widow and mother of the deceased employee. I would reverse the judgment of the lower Court and order that a judgment be entered in favor of the plaintiff Elizabeth H. Shore in the amount of $6,180, less $1,044 already paid to her on account.

---

DISSENTING OPINION BY MR. JUSTICE COHEN:

I dissent.

Section 7 (4) (b) of the plan does not, I believe, permit the committee to pay an amount less than the maximum. The vague standards set to guide the committee's determination of the amount of benefits to be paid are inadequate to afford proper safeguards to the employes, and consequently, any other interpretation might well render the obligation of the defendant illusory.

In every contract which provides for the exercise of discretion by one of the parties thereto, there is an implied condition that the discretion will be properly exercised. Even assuming, therefore, that the committee had the authority to exercise discretion in determining the amount of benefit payments, it had to exercise that discretion in good faith and within the bounds of a reasonable judgment. *Forrish v. Kennedy,* 377 Pa. 370, 105 A. 2d 67 (1954); see also 56 C.J.S. 834 (1948) (cases collected).

The Bell Telephone Company contends that the standard to be followed under section 7 (4) (b) is "consideration [of] the degree of dependency [of the bene-

ficiary] and such other facts as [the committee] may deem pertinent." Under the established public policy of the Commonwealth,[1] there is no higher degree of dependency than that of a needy wife, not living with her husband through no fault of her own, and a needy, widowed mother.

The committee awarded the wife the sum of $1044 and the mother, $312. It could not, in good conscience, have given partially dependent distant relatives much less. Such a lack of consideration for the closeness of the relationship, as well as the degree of dependency, herein involved indicates either that the committee did not exercise mature judgment, or that its determination was actuated by bad faith. In my judgment, dependent wives and mothers merit maximum payments, and on that basis, without contemplation of any other factors, I would affirm the judgment of the lower court.

---

[1] See, for example, The Support Law, Act of June 24, 1937, P. L. 2045, as amended, 62 P.S. §§1971-1977 (Supp.)