Matthias, J.
The single question raised in this appeal is whether the rights of an employee in a noncontributory retirement system established by an employer may be divested by the employer after the employee has fulfilled all the conditions relating to his right to retirement benefits.
There is no dispute in the present case as to the fact that plaintiff had fulfilled all the necessary conditions entitling him to retirement rights. That is, he had produced the required amount of business, served the necessary number of years with the company and attained the retirement age designated in the contract.
It should be noted at this point that it is of no importance that the termination of the contract affected only a part of plaintiff’s retirement benefits. The principle is the same whether all or a part is affected. The question is, can the employer destroy such rights?
Berkshire urges, and was supported therein by the lower courts, the proposition that under the termination clause incorporated in the contract signed by the plaintiff such rights were reserved to Berkshire, and it could thus cancel the contract and destroy such retirement benefits even though the reasons therefore were purely inconsequential. Berkshire’s argument is based on section 9 of the contract, which reads in part as follows:
“This agreement will automatically terminate upon the death of the agent, or upon change of his status to that of an employee of a general agent or of the company or to that of general agent, and .may also be terminated by mutual consent, or by either party hereto upon giving the other party 30 days’ written notice of intention so to do. In the event of termination for any reason other than as provided in section 8, above, then in lieu of all payments stipulated herein and in full settlement of all claims hereunder there will be paid to the agent, or his legal representatives, amounts as follows:
<<* * •
*408 “B. If terminated with more than one year of service as. a full-time agent and after the agent has produced $100,000 of new paid-for business (annuities excluded) as a full-time agent, and for a cause other than death of the agent or change of his status to employee or to general agent, amounts provided in columns 1 and 2 of schedule ‘A,’ attached hereto.” (Note: Columns 1 and 2 refer to regular commissions.)
Thus, the determinative issue in this ease is whether an employee can acquire vested contractual rights in a noncontributory retirement system under a contract in which the employer reserves the right to terminate the. contract.
It is of course axiomatic that, although a contract may be terminated, vested rights which have arisen under such contract are not and cannot be destroyed by such termination.
The concept of employees’ rights and of the place of the so-called fringe benefits in relationship to employees’ remuneration has undergone a substantial change in recent years.
Due perhaps to the increased span of life, retirement benefits have assumed a more important role in the consideration of an employee when he accepts employment. Management has recognized this fact and, to encourage career service and to minimize labor turnover which is so costly to industry, has inaugurated retirement programs in addition to Social Security. Some of these programs are supported by joint contributions of the employer and the employee, whereas others, as an inducement to career employment, are supported entirely by the employer.
When pension programs first came before the courts, pensions were construed primarily as mere gratuities by the employer, subject completely to the will of the employer. Later, as contributing pension systems arose, a distinction was drawn between the contributing and the noncontributing types of plan, the first being held to be a vested right, whereas the latter continued to be construed as a mere gratuity on the part of the employer which could be withdrawn at any time.
There has been, however, in recent years a gradual trend away from the gratuity theory of pensions. The courts, recognizing that a consideration flows to an employer as a result of *409 such pension plans, in the form of a more stable and a more contented labor force, have determined that such arrangements will give rise to contractual rights enforceable by the employee who has complied with all the conditions of the plan, even though he has made no actual monetary contribution to the fund. See annotation, 42 A. L. R. (2d), 467.
The most analogous situation to the one presently before this court was in the case of Mabley & Carew Co. v. Borden, 129 Ohio St., 375, 195 N. E., 697. The syllabus of that case reads as follows:
‘ ‘ 1. A certificate in which a particular employee was named, was executed by the employer and delivered to the employee named therein during the period of employment, which certificate contained the following recital of fact: ‘In appreciation of the duration and faithful character of your service heretofore rendered as an employee of this company, there will be paid in the event of your death, if still an employee of this company, to the party or parties designated by you on the back of this certificate a sum equal to the wages you have received from this company for the year next preceding the day of your death, but in no event to exceed two thousand dollars.’ The certificate, having been accepted by the employee, who remained in the employ of the company until her death, and prior thereto designated her sister a beneficiary on the back of such certificate, creates a contract in favor of a third party, with sufficient consideration to support it as such.
“2. The fact that such certificate contains a further provision, as follows: ‘The issue and delivery of this certificate is understood to be purely voluntary and gratuitous on the part of this company, and is accepted with the express understanding that it carries no obligation whatsoever or assurance or promise of future employment and may be withdrawn or discontinued at any time by this company,’ creates no defense as against the beneficiary.
“3. The acceptance of the certificate by the employee, the designation of a beneficiary on the back thereof, together with the fact that the employee remained in the employment of the company until death, constituted an executed contract and vested *410 in the beneficiary a right to the amount provided for therein.” (Emphasis added.)
The theory in the Mobley case was applied in the pension case of Bird v. Connecticut Power Co., 144 Conn., 456, 463, 133 A. (2d), 894, 897, in which the court said:
“A board of directors cannot legally strip an employee of the benefits of a pension plan where the employee has complied with the terms of the offer of a pension, since the purposes of the plan could be readily frustrated at the whim of the directors. Forrish v. Kennedy, 377 Pa., 370, 376, 105 A. (2d), 67; Wilson v. Rudolph Wurlitzer Co., 48 Ohio App., 450, 454, 194 N. E., 441. Even where an employer declares the plan is within the absolute discretion of the directors, the court will interpret the plan as a whole so as to give effect to its general purpose in securing the loyalty and continued service of the employees, and the employer may not defeat the employees’ reasonable expectations of receiving the promised reward.”
A retirement program has become a basic part of an employee’s remuneration even as his wages are a part thereof, and a consideration flows to the employer as well as to the employee through such a program.
Clearly, under our present economic system, an employer cannot offer a retirement system as an inducement to employment and, after an employee has accepted employment under such circumstances, withdraw or terminate the program after an employee has complied with all the conditions entitling him to retirement rights thereunder.
Therefore, whether a retirement plan is contributory or noncontributory and even though the employer has reserved the right to amend or terminate the plan, once an employee, who has accepted employment under such plan, has complied with all the conditions entitling him to participate in such plan, his rights become vested and the employer cannot divest the employee of his rights thereunder.
Plaintiff having complied with all the conditions in his contract entitling him to retirement rights and having reached retirement age under the contract, his retirement rights became vested and Berkshire could not terminate his contract so as-to divest him of such rights.
*411 The judgment of the Court of Appeals is, therefore, reversed, and, the parties having stipulated the amount due plaintiff in the event he should prevail, final judgment is rendered in his favor.

Judgment reversed.

Zimmerman, Bell and Herbert, JJ., concur.
Taet, J., concurs in the judgment.
O’Neill, J., not participating.