## Ziring v. Heidmann

*Alan Kahn,* for plaintiff.
*Leonard Sarner,* for defendants.

BOLGER, J.—And now, November 26, 1971, after hearing and submission of requests for findings of fact and conclusions of law by both plaintiff and defendants, the chancellor finds in favor of defendants and against plaintiff and in so doing the chancellor, having carefully scrutinized all of the requests for findings of fact and conclusions of law, adopts defendants' requests for findings of fact and conclusions of law as the findings of fact and conclusions of law of the court, as follows:

1. At all times material hereto, the company was engaged primarily in the business of distributing and selling to the department store, wholesale and retail trade an automatic swing for children.

2. On or about May 1, 1961, the company duly adopted a pension plan, with defendants or a predecessor as trustee, for the benefit of its employes.

3. Under article 2.9 and article 2.10 of the plan, all regular salaried nonunion employes between 30 and 56 years of age employed by the company for a period of two years are covered by the plan.

4. Under article 6.1 and article 9.1 of the plan, all contributions to the plan are made by the company.

5. Under article 2.14 of the plan, the normal retirement date at which pension benefits are payable to a covered employe and participant is 65 years of age.

6. Under article 5.1 of the plan, a sliding scale proportion of benefit pension rights are vested in an employe who voluntarily terminates his employment, depending upon the number of years he has been a participant prior to his termination of employment, payable at age 65.

7. Further, under said article 5.1 of the plan, in no event shall the trustees have the right to allow any participant values in excess of those specified.

8. Under article 5.3 of the plan, any former partici-

pant shall forfeit the unpaid portion of his vested interest if he enters into competition with the company, as determined by the trustees in their sole discretion, within two years of his separation from employment.

9. In or about 1956, plaintiff entered into the employ of the company as a salesman at a salary of approximately $150 a week.

10. At the time the company adopted the pension plan on May 1, 1961, plaintiff was employed by the company as its sales manager at a salary of approximately $12,000 to $14,000 a year and qualified as a covered employe and participant in the plan.

11. Plaintiff continued as sales manager of the company until he voluntarily terminated his employment on March 4, 1970, at which time his salary was $35,000 a year. By stipulation entered into by counsel for the parties, it is agreed that plaintiff's average earnings, based on his five highest consecutive years with the company, is $26,691.

12. Plaintiff was born on June 3, 1920, and was, on the date of his voluntary termination of employment, with the company on March 4, 1970, and at the time of the filing of the complaint in August 1970, approximately 50 years of age.

13. The fair market value of all of the assets in the account of plaintiff under the pension plan, including his share of trust income and the cash surrender value of his insurance policies applicable for plaintiff's March 4, 1970, date of voluntary termination of employment, was the sum of $33,128.10.

14. As of the March 4, 1970, voluntary termination of employment date, plaintiff had completed eight full years of participation in the plan and, under the aforesaid article 5.1 of the plan, was entitled to a vested interest, payable at age 65, of 40 percent of his $33,128.10 account or the sum of $13,251.24.

15. The company distributed and sold its aforesaid swing products nationally throughout the United States to such customers as J. C. Penny Company, Wilco, W. T. Grant, E. J. Korvette, Montgomery Ward, Zayres, S. & H. Green Stamps, Gibson's, Western Auto and the like.

16. At all times material hereto, until on or about March 4, 1970, the firm of Bresner Voynow Associates, Inc., was engaged by the company as one of its sales representatives to solicit the sale of its aforesaid automatic swing product in the New York area.

17. As a salesman for the company, plaintiff personally made sales to various customers and as sales manager personally solicited the customers of the company to purchase the swing product.

18. On March 4, 1970, plaintiff voluntarily quit his employment with the company and promptly entered into employment with Bresner Voynow Associates, Inc., as a salesman, pursuant to arrangements he had made with Bresner Voynow Associates, Inc., about three or four days prior thereto to go to work for it.

19. Prior to December 1969, the swing product of the company was manufactured for the company by Graco Metal Products Co., and since the spring of 1969, was also manufactured by Ajax Metal Products Company.

20. Since December, 1969, and until plaintiff quit his employment with the company, said swing product was manufactured for the company solely by Ajax Manufacturing Company.

21. The trade name of the swing manufactured by the Graco Metal Products Co. was "Swingomatic" and trade name for the swing manufactured by Ajax Metal Products Co. was "Swingmaster."

22. The Swingmaster swing manufactured by Ajax Metal Products Co. was the same general type of baby

swing as the Swingomatic manufactured by Graco Metal Products Co. and to the lay person, they were fairly identical so that the company would distribute either swing interchangeably to customers.

23. After the Graco Metal Products Co. discontinued manufacturing the swing product for the company, it continued to manufacture the swing on its own behalf and competed with the company, soliciting and attempting to sell the same customers as those of the company, Graco knowing the customers by having shipped the swing directly to them on behalf of the company in previous years.

24. A few days prior to plaintiff's leaving the company and entering into employment with Bresner Voynow Associates, Inc., Bresner Voynow Associates, Inc., became the sales agent for the Graco Metal Products Company for its swing product in the same New York area territory where it previously had been the sales representative of the company.

25. Promptly after plaintiff quit his employment with the company and entered into employment with Bresner Voynow Associates, Inc., plaintiff actively and personally solicited the same customers that company had to purchase the Graco swing product which Bresner Voynow Associates, Inc., was then selling.

26. All the customers plaintiff personally solicited to purchase the Graco swing being sold by Bresner Voynow Associates, Inc., had previously been the customers of the company at the time plaintiff was employed by it and his efforts to solicit these same accounts to purchase the Graco swing being sold by Bresner Voynow Associates, Inc., were just as hard as his previous efforts had been for the company.

27. In the one-year period immediately following plaintiff's entering into employment with Bresner Voynow Associates, Inc., the percentage of total

business of the firm which was represented by the sale of the Graco swing product was between 15 percent and 20 percent.

28. The total dollar volume of the sales of Bresner Voynow Associates, Inc., during this period for all of its products was in the vicinity of $3,600,000 to $4,000,000.

29. During this same period, plaintiff personally solicited 40 percent to 50 percent of the volume of total sales of this Graco swing product made by Bresner Voynow Associates, Inc., actively and personally soliciting the sale of the swing product to such previous customers of the company as Montgomery Ward, Wilco, S. & H. Green Stamps, W. T. Grant, Mangles and Vornado.

30. At the time plaintiff left his employment with the company, the annual sales volume of the company for the swing product which it was selling was in the vicinity of $2,250,000.

31. At the inception of the plan, plaintiff received a booklet describing the plan with a notation that a copy of the plan was on file in the company's office and was available for inspection on request, and that if the employe had any questions concerning retirement benefits, date of retirement or any other matters concerning retirement, he should feel free to consult with the trustees of the plan.

32. About three days before plaintiff voluntarily left the company, he made a copy of the pension plan and took it with him.

33. At this time, plaintiff was still in the employ of the company, had not notified anybody he was leaving, but had already made his decision to leave the company.

34. Prior to the time plaintiff obtained this copy of the pension plan, he never requested to inspect a copy

of the pension plan nor was he ever refused access to the pension plan.

35. After plaintiff voluntarily left the employment of the company and engaged in the sales and solicitation efforts on behalf of his new employer, Bresner Voynow Associates, Inc., the trustees determined that he had entered into competition with the company within two years of his separation from employment and forfeited the unpaid portion of his vested interest in the pension plan.

36. At the time of the hearing on May 7, 1971, and within two years after plaintiff voluntarily terminated his employment with the company on March 4, 1970, plaintiff was still soliciting and selling the Graco swing product on behalf of Bresner Voynow Associates, Inc., and has been continuously doing that since his association with this firm.

## CONCLUSIONS OF LAW

Article 5.3 of the plan, providing that "any former participant shall forfeit the unpaid portion of his vested interest if he enters into competition with the Company, as determined by the Trustees in their sole discretion, within 2 years of his separation from employment" is readily capable of definition and valid and enforceable.

The decision of the trustees that plaintiff entered into competition with the company within two years after his separation from employment by actively soliciting and selling a competitive swing product to the identical customers of the company was made in good faith and within the bounds of a reasonable judgment.

Prior to plaintiff's voluntary leaving his employment, he had notice of the noncompetition provision.

The unpaid portion of plaintiff's vested interest in

the pension plan has been forfeited by reason of his entering into competition with the company and he is entitled to no benefits in the plan.

In the alternative,

a. Plaintiff was born on June 3, 1920, and is approximately 51 years of age.

b. The amount credited to the account of plaintiff under the pension plan at the time he voluntarily terminated his employment was the sum of $33,128.10.

c. Plaintiff completed eight full years of participation under the pension plan and his vested interest is 40 percent of $33,128.10 or the sum of $13,251.24.

d. Any benefits to which plaintiff may be entitled are not payable to him until he reaches the age of 65 years: Article 5.1.

Plaintiff was a covered employe under the pension plan established by the company. He voluntarily quit his employment with the company and immediately took up employment with another employer in direct competition with the company. The pension plan of the company specifically provides that an employe shall forfeit the unpaid portion of his vested interest if he enters into competition with the company within two years of his separation from employment. The pension plan was noncontributory and all the contributions to the plan were made by the company. It is the contention of the trustees that their determination that plaintiff's activities had caused him to forfeit his rights in the pension plan is clearly reasonable.

It is not denied that even though an employe does not contribute to a pension plan, when he renders service to an employer who has such a plan in effect, he has a contractual right to enforce the plan according to its terms. Moreover, even though by the terms of the plan the trustees can determine in their sole discretion whether or not an employe has entered into competi-

tion with the company so as to forfeit the unpaid portion of his vested interest, defendants recognize that the decisions of the trustees are subject to judicial review to insure that they are exercised in good faith and within the bounds of a reasonable judgment: Shore v. Bell Telephone Co. of Pa., 389 Pa. 445 (1957).

The exact issue in this case has recently been decided by the Supreme Court of Pennsylvania in favor of the position of the trustees in Garner v. Girard Trust Bank, 442 Pa. 166 (1971). There, as here, any former member forfeited the unpaid vested interest if he entered "into competition with the Company as determined by the Committee . . . in its sole discretion within 2 years after his separation from employment and prior to reaching age 65." The employe in the Garner case left the employ of one real estate firm and went to work for another real estate firm performing the same rental services which he had previously performed for his former employer.

The Supreme Court pointed out that the phrase "enter into competition" presented no real problem of definition and that the employe, as plaintiff in this case, did not deny that his new employer was in competition with his old and that he was performing the same services for the new employer as he had for the old. Thus, it was held that there was no way to avoid the forfeiture except by totally eliminating the noncompetitive provision of the plan, which a chancellor does not have authority to rewrite or amend in accordance with his own ideas as to what is fair and equitable: Reilly v. Walker Brothers, 425 Pa. 1 (1967).

Similarly, in the instant case, plaintiff readily admits that he made arrangements to leave the employ of the company about a week before his termination date, immediately undertook to sell the children's swing item, which was the sole business of the company, to

the same customers, was successful in diverting many of the customers away from the company and was at least actively soliciting others to get them to purchase his competing product. All the provisions of the plan were readily available to him throughout his entire employment with the company and in fact prior to his quitting his job and before he notified anyone of his intention to leave, he did actually obtain Xerox copies of the plan. He thus had notice of the noncompetition provision before he entered into his new employment. See Garner v. Girard Trust Bank, supra.

Under 5.1 of the plan, in the event any participant shall voluntarily or involuntarily terminate his employment with the company, the participant shall be entitled to a vested interest in the pension plan payable at the normal retirement age of 65. This is a salutary provision, since the purpose of the pension plan is to give an incentive to employes to remain with the company and if they could build up a fund and immediately take it upon termination of employment, the primary purpose of the adoption of the pension plan would be defeated.

Plaintiff asks that whatever interest he may have in the plan be payable to him immediately when he is only at the age of approximately 51 years. Here again, there is no way to avoid the fact that the benefits are not payable until the age of 65, except by totally eliminating this provision of the plan, which the court has no authority to do: Garner and Reilly cases, supra. Article 5.4 of the plan does not change this result and aid plaintiff in obtaining payment of benefits before the age of 65, since the provision that "a Participant shall be entitled to receive his vested interest in any manner permitted by the Trustees equally applicable to all Participants" refers to the manner in which the benefits shall be paid, i. e., by an annuity for life or for

a fixed term of years or by a lump sum payment and the like (see article 6.6), and does not relate to the time of payment of the vested interest which is controlled by the article 5.1 provision that benefits are not payable until the age of 65.

The determination of the trustees that immediately upon plaintiff's leaving his employment with the company, he entered into competition with the company so as to work a forfeiture of his vested interest in the pension plan was made in good faith and was within the bounds of a reasonable judgment. Accordingly, plaintiff has no benefits in the plan and, in any event, such benefits to which he may be entitled are not payable to him until he reaches the age of 65.

Defendants' motion to dismiss is denied formally principally because of the findings herein in their favor.