## Abell v. Fidelity Bank

*John L. Lachall*, for plaintiffs.
*George C. Corson*, for defendants.

STIVELY, Jr., *J.*, August 4, 1978—Plaintiffs in this action, Ernest G. Abell and Ralph E. Duey, were formerly employed by defendant, J.V. Calhoun Company. The Calhoun Company is settlor of a profit-sharing trust of which defendant, Fidelity Bank, is trustee. As of January, 1973, plaintiffs were eligible employes under the profit-sharing trust agreement, absent any actions by them which may have forfeited their rights thereunder. As of December 31, 1972, the company had contributed $12,685.29 to the plan on behalf of plaintiff Abell, and $120.76 on behalf of plaintiff Duey. (There were no employe contributions.)

On January 29, 1973, Abell, who headed the Gaseous Fuels Division of J.V.C. Equipment Company, a subsidiary of J.V. Calhoun Company, and Duey, an employe of the same division, informed John Calhoun, Jr., the president of the company, that they intended to resign in 30 days. Four days later, on February 2, 1973, they were fired.

Subsequent to leaving the Calhoun Company, plaintiffs requested their share of the profit-sharing trust. They were informed by letter in June of 1973, that this would not be forthcoming. This action was then brought in assumpsit. After a jury verdict in favor of defendants, plaintiffs filed motions for a

new trial, in arrest of judgment, and for judgment n.o.v.

In support of these motions, plaintiffs have advanced some 13 reasons why relief should be granted. Several of these have not been briefed, and are thus deemed waived on post-trial consideration and appeal. The remaining reasons have been combined into five arguments, which will be discussed seriatum.

I. Defendant insists that the verdict was against the weight of the evidence and against the law, and that a motion for a directed verdict should have been granted.

"In order to warrant the granting of a new trial on the ground that the verdict is against the weight of the evidence, the preponderance of evidence must be clear and decisive." Lester v. Century Indemnity Co., 356 Pa. 15, 17, 50 A. 2d 678 (1947), citing 6 Standard Pa. Pract. §49, 320. More recently, our Supreme Court has said: "When a jury's finding is so opposed to demonstrated facts that, looking at the verdict, the mind stands baffled, the intellect searches in vain for cause and effect, and reason rebels against a bizarre and erratic conclusion, it can be said that the verdict is shocking and unjust, and that a new trial is imperative." Green v. Johnson, 424 Pa. 296, 298, 227 A. 2d 644 (1967). This is hardly the case here; the jury's verdict was eminently reasonable.

Defendant in this case stipulated at the outset that plaintiffs had been entitled to the money in question at the beginning of January, 1973. However, it advanced the affirmative defense that plaintiffs had forfeited their entitlement to any share of the profit-sharing fund by their disloyal acts at the time they left the company's employ.

The fifth article of the profit-sharing trust agreement stated: "Upon resignation or discharge of an eligible employee from the service of the Company, provided that such discharge is without cause or fault upon the part of such employee, such as dishonesty, misconduct or insubordination, such employee shall be entitled to receive from the Trustee, such portion of the assets of the Trust allocated to such employee, as shall be determined by the number of years said employee has been a participant in the Plan, in accordance with [the attached schedule]."

In support of their contention that plaintiffs' resignation or discharge was with "cause" or "fault," defendants attempted to show that, while still in the employ of Calhoun, plaintiffs (through Abell) solicited a customer of their employer for the business which they were setting up on their own.

The evidence was undisputed that several days prior to informing the president of Calhoun of his intended resignation, Abell had spoken with officers of Tyronics, Inc., a major client of Calhoun's Gaseous Fuels Division, and told them that he and Duey "didn't see too much of a future" with Calhoun and were at least very seriously considering leaving. These Tyronics officers asked Abell to inform them of his and Duey's decision and, after speaking with them, Abell expressed to Duey his confidence that they would have a good chance of getting the Tyronics account for the new Abell Engineering Company.

Immediately after Abell and Duey informed the president of the Calhoun Company of their decision to resign, Abell called Tyronics. That same afternoon, Tyronics wrote a letter to Calhoun cancelling its representative agreement. That letter said in

part: "It is our understanding that Ernest Abell and Ralph Duey have tendered their resignations . . . We feel that Tyronics' sales success in the recent years has been primarily due to the efforts of Mr. Abell and Mr. Duey. For this reason, in the best interest of Tyronics, we are appointing the Abell Engineering Company our representative in the Philadelphia area."

From this evidence, the jury could reasonably infer that plaintiffs had in fact solicited the Tyronics account while still employed by Calhoun. The profit-sharing trust agreement stated that an employe could "[forfeit] his right to participation by reason of unfaithful service to the corporation, such as dishonesty, misconduct or insubordination . . ." From plaintiffs' actions, the jury could also reasonably infer that plaintiffs had been "unfaithful" in their service to the corporation within the meaning of the profit-sharing trust agreement. (See Restatement, 2d, Agency, §393, comment e.) Since the evidence was compatible with a finding that plaintiffs had forfeited their rights under the profit-sharing trust agreement, the verdict was not against the weight of the evidence.

Neither was the verdict against the law. "In order . . . to secure a new trial on the ground that the verdict is against the law, the party complaining must show that the jury disregarded the instructions of the Court." 6A Standard Pa. Pract. §75, 101, and the cases cited there. There was no attempt to make such a showing here. In fact, plaintiffs contend not that the jury failed to follow the judge's instructions, but rather that those instructions were erroneous.

In connection with their motion for judgment n.o.v., plaintiffs urge that the trial court erred in

refusing to grant their motion for a directed verdict.

"It is well settled that a Judgment n.o.v. will be entered only in a clear case, and that any doubts will be resolved in favor of the verdict." 6A Standard Pa. Pract. §163, 209, citing Pantuso v. Pittsburgh Motor Coach Co., 360 Pa. 464, 62 A. 2d 56 (1948).

The Superior Court has stated: "A Judgment n.o.v. is the directing of a verdict in favor of the losing party, despite a verdict to the contrary. It may only be entered in a clear case where the evidence is insufficient to sustain a verdict against him. Stewart v. Chernicky, 439 Pa. 43, 266 A. 2d 259 (1970). Judgment n.o.v. is inappropriate if the evidence on a material point presented an issue of fact for decision by the jury. This method of attacking the verdict may never be utilized so as to invade the province of the jury, especially where that determination is based partly on questions of conflicting testimonies and credibility of witnesses. Brandon v. Peoples Natural Gas Co., 417 Pa. 128, 207 A. 2d 843 (1965); Axilbund v. McAllister, 407 Pa. 46, 180 A. 2d 244 (1962). Where such questions were determined by the trier of fact, and if there is reasonable support for the verdict which was rendered, a Judgment n.o.v. will not be granted, as the weight of the evidence is a jury matter and may only be raised by a motion for a new trial if the verdict is contrary to the weight of the evidence." Eldridge v. Melcher, 226 Pa. Superior Ct. 381, 385-86, 313 A. 2d 750 (1973). This passage from Eldridge has been recently quoted with approval by the Superior Court in the case of Trawick v. Nationwide Mutual Insurance Co., 242 Pa. Superior Ct. 271, 363 A. 2d 1265 (1976).

In this case there were clearly questions of fact for the jury; binding instructions at the close of the trial would not have been appropriate, and judgment n.o.v. is accordingly not in order now.

II. Plaintiffs' second argument in support of their motion is that the trial court's instructions that dishonesty, misconduct, insubordination, and unfaithfulness were not the only reasons that could be used to forfeit plaintiffs' rights in the profit-sharing trust is an incorrect statement of the law.

In his instructions to the jury, the trial judge said:

"[T]he key language then that you will have to decide on the issue that is before you is whether the defendant has proven by the weight of the evidence, tipping the scales in its favor, that the plaintiffs here have in fact forfeited their right to participation by reason of unfaithful service to the Corporation, such as, not limiting it but giving as an example, dishonesty, misconduct, or insubordination; or the language contained on pages 9 and 10 [of the profit-sharing trust agreement], whether the defendants have proved by tipping the scales in their favor that they have shown that the employees, the plaintiffs, have forfeited their rights to this money by reason of cause or fault on their part, such as dishonesty, misconduct, or insubordination. Again, I am not saying those are the only ones, but they are giving them as an example."

Twice in the profit-sharing trust agreement reasons for forfeiture of any interest in that fund are given as "*such as* dishonesty, misconduct or insubordination." (Trust Agreement, pp. 9, 19.)

The essence of plaintiffs' argument here is that "such as" should be treated as introducing an ex-

clusive list of reasons for such a forfeiture. In other words, only dishonesty, misconduct, or insubordination would be grounds.

In support of this proposition, plaintiffs cite several cases. Forrish v. Kennedy, 377 Pa. 370, 105 A. 2d 67 (1954), and Diskin v. Phila. Police Pension Fund Association, 367 Pa. 273, 80 A. 2d 850 (1951) are pension cases. They stand for the proposition that if a term "is susceptable of two different interpretations, the construction most favorable to the pensioner must be the one adopted." Forrish v. Kennedy, supra, 276; Levitt v. Billy Penn Corp., 219 Pa. Superior Ct. 499, 283 A. 2d 873 (1971), and Home Builders of Mercer County v. Dellwood Corp., 379 Pa. 255, 108 A. 2d 731 (1954), merely give the basic rule that any doubt or ambiguity in a contract must be construed against the party who drafted that contract.

However, these rules of construction are reached only if it is concluded that the simple phrase "such as," as it is used in this particular trust agreement, is a source of ambiguity, doubt, and uncertainty. That would not seem to be the case here.

The phrase "such as" does not appear to have been judicially construed in any Pennsylvania decision. The cases construing the term in other jurisdictions, with the possible exception of one lower court holding in New York State, take the position that "such as" is a term of general similitude, indicating matters of the same or like kind or giving an example of a rule. (These cases are collected in 40A Words and Phrases, 50.) This is in agreement with the generally understood meaning, and it is really the only sensible interpretation of the phrase in the context of the instrument being interpreted here.

Accordingly, the trial court's instruction to the jury on this point was correct, and there was no error in refusing plaintiffs' motion for a new trial based on this ground.

III. Plaintiffs' next argument is that the trial court erred in charging the jury on the rights of the parties under the agreement, and in refusing certain of their requested points for charge.

The section of the charge complained of reads as follows: "Members of the Jury, this case is based on Exhibit P-1, which will go out with you. The plaintiffs claim, each plaintiff claims, that he has certain rights under certain portions of P-1. Now, it will not be necessary for you to read all of Exhibit P-1, which amounts to these two documents stapled together. Two sets of documents, I should say, but only certain portions of it.

"The defense arises out of the language of certain portions of P-1.

"As I told you at the outset, this is a contract action. The plaintiffs claim they have a right which arises out of a contract, and P-1 is the contract. Defendants say that they have a defense, there was a forfeiture arising out of the contract, and that the contract is P-1.

"So, basic to this case is the language of the profit-sharing plan agreement here, P-1.

"Members of the Jury, you cannot under your oaths decide this case on the basis of what you think is right and wrong; what you think an employee or an employer should or should not do. You cannot under your oath decide this case on some general principle that you think would apply to all employment and the respective duties of employer and employee. *We are not talking about right and jus-*

*tice and fairness and honor and general rights. We are talking about in this case what are the rights of these parties under this agreement.*

"If the plaintiffs have any rights, they arise out of this agreement.

"If the defense has the defense that it contends, it arises out of this agreement, not some general idea of what an employer should do or what an employee should do.

"All-right. If that is the case, we must turn to the agreement and see what it says that is relevant to the issues here."

Plaintiffs' brief takes the two italicized sentences in the foregoing passage and complains that they are erroneous. However, taken in context, they are a clear, straightforward and correct statement of the issues and of the law.

The failure of the trial judge to read ten of plaintiffs' requested points for charge and supplemental points for charge is also assigned as error.

Plaintiffs' point 4, on the burden of proof, was misleading as drafted and properly refused. The law in this area was fully and adequately stated to the jury by the trial judge.

Plaintiffs' fifth and sixth points were also properly refused. Both dealt with an employe's rights under a pension plan, and were misleadingly stated. The law with respect to the rights of the parties under this agreement was adequately given by the court throughout its instructions.

Points 11 and 12 were redundant and were adequately covered when the trial judge affirmed and read point 13 to the jury.

Plaintiffs' fourteenth point stated: "In the absence of a specific statement (as here) in the plan to the effect that going to work for a competitor or

going into competition with the employer is cause for forfeiture of rights under the plan, such action is not proof of disloyalty or cause to deny benefits under general disloyalty clauses." (Citations omitted.)

While this may represent a generally accurate reading of the cases cited, it is not applicable here. The whole theory of defendant's affirmative defense is not that plaintiffs were disloyal in going into competition, but rather that they were disloyal in soliciting defendant's clients for their prospective business while still in the employ of defendant. "[R]equested points are properly refused where they are not relevant to the issues being tried, or applicable under the evidence in the case." 6 Standard Pa. Pract. §50, 453, citing O'Donnell v. Philadelphia Record Co., 356 Pa. 307, 51 A. 2d 775 (1947), cert. denied 332 U.S. 766 (1947); Bills v. Zitterbart, 363 Pa. 207, 69 A. 2d 78 (1949).

Plaintiffs' four supplemental points for charge, all based upon United Aircraft Corp. v. Boreen, 284 F. Supp. 428 (E.D. Pa. 1968), were all refused. The points provided were in large measure inapplicable, entirely irrelevant or incomplete in their statement of the law. Insofar as any portion of them were relevant and accurate they were covered adequately in the trial judge's instructions.

Accordingly, there was no error in the instruction complained of or in the refusal of the proffered points for charge.

IV. In his instructions, the trial judge construed the profit-sharing trust agreement in such a way as to narrow the issues before the jury. Plaintiffs now urge that this was error.

The judge stated: "I am instructing you that the language 'without cause or fault upon the part of such employee, such as dishonesty, misconduct, or

insubordination,' applies not only to discharge, but it applies to resignation. Now, that is my duty to construe this contract, and I am construing it and I am instructing you as a matter of law, you must construe it that way." The passage of the agreement which was being construed has been previously quoted in full.

In explaining his construction of the agreement to the jury, the trial judge went on the say:

"The reason the Court is construing this language, the language 'without cause or fault upon the part of such employee, such as dishonesty, misconduct, or insubordination' applies to both resignation or discharge is because of the language . . . on the next page [of the profit-sharing trust agreement]:

"'Except in the case of total disability or death, no employee who shall have been a participant in the plan for less than one year or any employee who shall resign or be discharged with a cause or fault on his part at any time.'

"So I say to you that the issue of cause or fault applies both to resignation and discharge, because all of the parts of that paragraph must be read together. And in the opinion of the trial Judge, read together, they can have only one meaning, and that is to apply the issue or question of cause or fault to both resignation and discharge.

"Now that interpretation that I have just given to you I think is further required by the other applicable language of this agreement. We are on page 19 in Section 15G. 'It is provided further,' and I must read all of this, although only the latter part is of great moment, 'it is an expressed condition of this agreement that it shall be impossible, at any time prior to the satisfation of all liabilities hereunder, with respect to eligible employees and

their beneficiaries under the trust, for any part of the corpus or income to be used for, or diverted to purposes other than for the exclusive benefit of the eligible employees or their beneficiaries; and it is expressly provided that no portion of the fund or assets allocated to any individual employee can be diminished or used in any manner in favor of any other employee, unless an employee has forfeited his right to participation by reason of unfaithful service to the Corporation, such as dishonesty, misconduct or insubordination.'

"So I am saying to you that the test here described as 'forfeiture by reason of unfaithful service to the Corporation,' and in the previous language as to 'cause' or 'fault' applies to both resignation and discharge.

"Now, members of the Jury, you see that takes away from your consideration one obvious issue here; were these men discharged or did they resign because under the construction that the trial Judge believes is proper, the same test applies to both resignation and discharge and it makes no difference whether these men were discharged or whether they resigned in your decision in this case."

"The function of contract interpretation and construction is a question of law peculiarly within the province of the Court." National Products Co., Inc. v. Atlas Financial Corp., 238 Pa. Superior Ct. 152, 158, 364 A. 2d 730, 733 (1975), citing Filler Products, Inc. v. Corriere, 381 Pa. 394, 395, 113 A. 2d 219, 221 (1955), and numerous other decisions. Careful examination of the pertinent sections of the profit-sharing trust agreement show that, taken as a whole, as it must be, the meaning was clear, and those provisions were accurately construed by the trial judge in his instructions to the jury.

V. Plaintiffs' final argument is that the trial court erred in admitting two defense exhibits, Calhoun Company telephone bills dated January 11 and February 11, 1973. Plaintiffs' brief asserts that these exhibits were prejudicial to them and irrelevant because they did not tend to prove any of the issues which were defendants' burden.

Defendants' burden on their affirmative defense was to show unfaithful service and fault on the part of plaintiffs through their alleged solicitation of the Tyronics account while they were still in Calhoun's employ. These exhibits showed telephone calls made by plaintiff Abell, from Paoli, Pennsylvania (the location of his home), to Tyronics in Ohio, during the month preceding his departure from the Calhoun Company. These calls were charged on a credit card issued to Abell by his employer, who paid the charges. (It should be noted that the Calhoun offices were in Bala Cynwyd, not Paoli.) One of these calls was made on January 31, 1973. While the weight of these exhibits, and the testimony relating to them, was for the jury, they were clearly relevant to the primary issue in the case.

For all of the foregoing reasons, plaintiffs' post-trial motions for judgment n.o.v., in arrest of judgment, and for a new trial were properly denied.