## Lowe, Appellant, *v.* Jones.

Argued March 19, 1964. Before BELL, C. J., MUS-MANNO, JONES, COHEN, EAGEN, O'BRIEN and ROBERTS, JJ.

*Frank A. McFarran, Jr.,* with him *Kenney, Stevens, Hill & Clark,* for appellant.

*J. Tomlinson Fort,* with him *Reed, Smith, Shaw & McClay,* for garnishee, appellee.

OPINION BY MR. JUSTICE MUSMANNO, June 1, 1964:

On March 31, 1956, George Washington Jones, being then over 65 years of age and having had more than 15 years of continuous service as a steelworker with the Tennessee Coal and Iron Division of the United States Steel Corporation, retired to his home in Crawford, Mississippi, there to enjoy the remaining years of his life assured of the necessities of life because of a pension paid to its employees by the United States

Steel Corporation through contract with the United Steelworkers of America, of which he was a member.

On June 14, 1957, Jones became indebted to J. W. Lowe of Birmingham, Alabama on a judgment in the sum of $6,000 entered in an action at law, whose details here are irrelevant. Lowe, through counsel, initiated an action of foreign attachment in assumpsit in the Court of Common Pleas of Allegheny County, naming the United States Steel and Carnegie Pension Fund, a Pennsylvania corporation, as garnishee. The garnishee Fund filed preliminary objections averring that Jones' pension was not subject to attachment. The court of common pleas sustained the objections and Lowe appealed.

In this action Lowe seeks to obtain payment of his judgment from the pension payments due Jones. On July 1, 1954, the United States Steel Corporation had entered into a pension agreement with the United Steelworkers of America (Jones' bargaining representative) whereby Jones would be entitled to a pension without any contributions by him. In order to administer this pension agreement the corporation negotiated a trust agreement with the Carnegie Pension Fund, a separate legal entity, whereby the corporation would provide the Fund with assets which the Fund would distribute in accordance with the pension agreement and certain rules which were incorporated by reference into the trust agreement.

The indicated pension agreement contained the following (sometimes called spendthrift) provisions: "(2) Assignment, pledge or encumbrance of any kind of pensions will not be permitted or recognized under any circumstances. Pensions shall not be subject to attachment or other legal process for debts of the pensioners. (3) No employee prior to his retirement under conditions of eligibility for pension benefits shall have any right or interest in or to any portion of any

funds which may be paid into any pension trust or trusts heretofore or hereafter established for the purpose of paying pensions and no employee or pensioner shall have any right to pension benefits except to the extent provided in this Agreement. Employment rights shall not be enlarged or affected by reason of the foregoing pension provisions."

The pension rules provide, inter alia: "(c) No pension payable under the provisions of the 1954 Noncontributory Pension Rules shall be subject in any way to alienation, sale, transfer, assignment, pledge, attachment, garnishment, execution, or encumbrance of any kind, and any attempt to accomplish the same shall be void."

The court below ruled, and properly so, that Jones' pension would no more be attachable than his wages would have been. It is rather well established now that pensions are not gratuities but payments made as deferred compensation for services already rendered.[*] A wage-earner's pension is not something which miraculously falls to him as manna from the sky. It is the fruit of the tree which he has planted, which he has nurtured with his continuous loyal service and watered with the sweat of his years of dedicated work.

This fruit may not be taken from the steelworker in the case at hand for still another reason. The pension agreement and pension rules incorporated by reference in its agreement between the Fund and the Corporation specifically prohibit the attachment here attempted.

The appellant argues, however, that the benefits of spendthrift provision in the pension agreement cannot apply to the appellee because he is not a resident of Pennsylvania, citing the Act of May 3, 1917, P. L. 112, §1, as amended by the Act of July 15, 1935, P. L. 1024,

---

[*] *Nemser v. Aviation Corp.*, 47 F. Supp. 515; 70 C.J.S. Pensions §1.

§1, 40 P.S. §515, which provides, inter alia: "Any annuity or pension, whether by way of a gratuity or otherwise, granted or paid by any private corporation or employer or out of a trust fund established by any private corporation or employer to a retired employe, being a citizen of this Commonwealth, under an agreement, plan or trust indenture which provides that the same shall not be assignable or subject to execution or attachment, shall be exempt and free and clear from the claims of all his or her creditors, and from all legal and judicial processes of execution, attachment, or otherwise, whatsoever."

The appellant maintains that the reference to "being a citizen of this Commonwealth" in the Act excludes Jones from its operation. In effect he insists that the Act raises a protective umbrella over Pennsylvania citizens alone. Of course, it would be a strange interpretation of any law to say that it shields only Pennsylvanians from a storm which sweeps through the State, striking residents and non-residents alike. To interpret the Act, as desired by the appellant, would be to exclude non-resident pensioners from a protection which is assured them in the basic pension agreement itself. It would be to make a distinction lacking in the agreement. In fact, the appellant's contention, if accepted, would do violence to the plain intendment of the pension agreement, for it is a matter of judicial knowledge that the members of the United Steelworkers Union perform their tasks in all parts of the country. And it is quite apparent that the pension agreement which the Union sponsored, approved and supports, was never intended to be provincialized.

The preliminary objections filed by the garnishee to the action of foreign attachment in assumpsit were properly sustained, and the judgment is affirmed.