Levitt, Appellant, v. Billy Penn Corporation.

Argued March 19, 1971. Before WRIGHT, P. J., WATKINS, MONTGOMERY, JACOBS, SPAULDING and CERCONE, JJ. (HOFFMAN, J., absent.)

*Bernard J. Smolens,* with him *Dennis R. Suplee,* and *Schnader, Harrison, Segal & Lewis,* for appellant.

*Milton S. Lazaroff,* with him *Martin Techner,* and *Techner, Rubin and Shapiro,* for appellee.

OPINION BY SPAULDING, J., September 21, 1971:

Appellant David Levitt appeals from an order of the Court of Common Pleas of Philadelphia, en banc, denying him funds which he claims to be due under the Profit Sharing and Retirement Plan of appellee, The Billy Penn Corporation.[1] The order reversed a prior judgment in appellant's favor, after a trial without a jury before the late Judge Joseph D. BURKE.

Appellant was employed by appellee continuously from July 1946 to April 1967 in an executive position.

---

[1] Continental Bank and Trust Company is the trustee of the plan and only a nominal defendant.

He decided to leave after being warned by his doctor in 1966 that unless he "slowed down" or changed jobs he would risk irreparable harm to himself.[2] He was then 60 years of age and a vice-president of the corporation.

Appellant communicated his decision to Alexander Silberman, president of Billy Penn. The latter suggested that he consult other doctors, which he did. They advised an extended vacation, and he spent a month in Florida. Before appellant left for Florida, Silberman urged him to reconsider his decision and offered to let him "write his own ticket" if he remained with Billy Penn. He again refused and by letter dated March 13, 1967, notified appellee he was leaving, effective March 31, 1967.

After his return, appellant requested his share in the company plan. He told Silberman that he was thinking of working for Corell Steel Company, a steel warehousing company and a dealer in steel products. It is in limited competition with appellee, which also manufactures and sells steel products.

Silberman expressed concern over appellant's proposed departure and repeated his offer of less work and higher remuneraton. At their next meeting Silberman asked appellant to sign a noncompetition agreement which appellee was presenting to all of its executives. Neither appellant's general employment arrangement wth appellee nor the terms of the retirement plan required such an agreement. Silberman told appellant that his failure to sign would cast reflections upon his loyalty. Appellant refused to sign.

On May 16, 1967, Silberman wrote appellant stating that his request for "early retirement" had been disapproved, that appellant was discharged for acts injurious to the company,[3] and that he had a right to a hear-

---

[2] Appellant suffered a coronary occlusion in 1966.

[3] Although he testified that he regarded Levitt's employment terminated as of March 13.

ing before the retirement plan committee within 15 days to appeal the forfeiture decision. The committee affirmed the decision denying appellant any benefits under the plan.

The company and the trial court base denial of benefits to appellant on Section VIII-A of the plan. This section provides that the normal retirement age for an employee is 65. However, under Section VIII-A(4): "Any member may elect to retire on any of the five anniversary dates preceding his normal retirement date upon application to the Committee and approval by the Company. . . ." The company contends that this section governs *all* voluntary resignations by its employees. Appellant, however, argues that his rights are based on Section VIII-E of the plan. That section is headed "Severance of Employment". It provides: "In the event of the termination of a Member's employment prior to retirement (except if such termination occurs as a result of death, disability, dishonesty, disloyalty, insubordination or the conviction of a crime), the Committee *shall* direct that such Member's Severance Benefit as hereinafter defined shall be distributed to him. . . ." (Emphasis added.)

There are two relevant subsections of Section VIII-E. Subsection (1) is headed "Termination of Employment because of Lack of Work, etc." It states: "If the employment of any Member is terminated *by the Company* solely because of a change in the nature of the Company's business or a reduction in the Company's work force, the Member's Severance Benefit shall be one hundred percent (100%). . . ." Subsection (2) entitled "Resignations, etc." provides:

"In the event a Member's employment shall terminate *prior to retirement for any reason* other than those hereinbefore mentioned in this Article VIII-E, his Severance Benefit shall be an amount equal to the following percentages of the net value of his account of the

valuation date next preceding the date of termination of membership:

. . .

One but less than two full years of continuous participation in the Plan     10%

Two but less than three full years of continuous participation in the Plan     20%

. . .

Ten or more full years of continuous participation in the Plan     100%

In regard to Section VIII, the court en banc stated: ". . . the pattern which clearly emerges is that if an employee continues in the Company's employ until retirement age, or if he is discharged by the company for no fault of his own, he is entitled to the full pension to which his years of participation in the plan entitle him. If, on the other hand, he voluntarily quits the Company before retirement age, then he has no right to a pension, and it is purely discretionary with the Company whether they wish to grant him one. *Under such an interpretation of Section VIII, it becomes clear that Section VIII-A(4) deals with an employee who voluntarily retires prior to the retirement age, and Section VIII-E deals with the situation where an employee is fired by the Company.*" (Emphasis added.)

We disagree. Pension plan benefits are deferred compensation, not gratuities, even if the employee makes no contribution to the fund. *Lowe v. Jones,* 414 Pa. 466, 469, 200 A. 2d 880, 881 (1964). The employee has a contractual right to enforce the plan according to its terms, and such benefits may not be denied arbitrarily. Even where words such as "absolute discretion" are used, such terms do not give the administrative body unfettered discretion. It is necessary to look at the plan itself to define the limits of the trustees' power. *Garner v. Girard Trust Bank,* 442 Pa. 166, 169, 275 A. 2d 359,

361 (1971); *Forrish v. Kennedy*, 377 Pa. 370, 376, 105 A. 2d 67, 70 (1954).

The terms of the present plan do not explicitly state that if an employee resigns from the Company he has no rights under the plan. Nor should such an interpretation be implied. Section VIII-E supports the opposite view—that upon resignation an employee does have a right to benefits under the plan. Section VIII-E speaks of "terminations *prior to retirement*" and gives the employee an absolute right to benefits unless his termination is due to death, disability, dishonesty, disloyalty, insubordination, or the conviction of a crime. While subsection (1) uses the language "if the employment of any member is terminated *by the company*" this phrasing is not used in subsection (2) which by its heading *"Resignations"* clearly implies coverage of the present situation. The interpretation of the en banc court is strained when placed against the language of the section. (Emphasis added.)

This interpretation is supported by the letter the appellee circulated to explain its profit-sharing plan to its employees. In a section of that letter entitled "Severance of Employment", the appellee used the word "discharge" to describe dismissals for lack of work or for cause and then stated that "termination, *prior to* retirement, for *any other reason,* shall entitle member to receive 10% of the net value of his account for each year of participation in Plan." (Emphasis added.)

If we were to accept appellee's interpretation, highly inequitable situations would result. For example, if the employer contributed $100 to the pension fund for each year an employee worked, and the employee was 55 years old, worked for the company 20 years, and wished to leave, under the company's interpretation of Section VIII he would be entitled to no money at all because he would not have yet reached 60 years of age [Section VIII-A (4)]. Using the appellant's interpretation he

would be entitled to $2000 (20 years x $100) under Section VIII-E.[4] Appellee's present interpretation of the plan in fact contradicts the rationale of the aforementioned letter. Even if it is granted that there may be an alternative interpretation of the plan, the construction most favorable to the employee must be adopted. *Forrish v. Kennedy,* supra; *Diskin v. Police Pension Fund Assn.,* 367 Pa. 273, 278, 80 A. 2d 850, 852 (1951). As Chief Justice WEINTRAUB of the New Jersey Supreme Court stated: "The question, then, is whether the employee should suffer a forfeiture of something he has earned. Forfeiture being disfavored we should take any tenable view of the indenture to avoid it. Indeed, these plans are to be liberally construed in favor of the employee." *Russell v. Princeton Laboratories, Inc.,* 50 N.J. 30, 35, 231 A. 2d 800, 803 (1967).

There is also the basic rule that any doubt or ambiguity in a contract must be construed against the party who drafted that contract. See, e.g., *Home Builders of Mercer County v. Dellwood Corp.,* 379 Pa. 255, 108 A. 2d 731 (1954). This is particularly applicable in

---

[4] The difference in the parties' interpretations of the plan can be further illustrated by the following hypothetical situations. Suppose the employer contributed $100 each year an employee works, that the employee has worked for 5 years, is 60 years old, and that he now wishes to leave. Under the company's interpretation, the employee is entitled to no benefits unless the company allows those benefits in its total discretion under Section VIII-A. Under the appellant's interpretation, the employee is entitled to $250 under Section VIII-E (50% of the net value of his account—$500) ; but he could receive $500 if the company chose to compensate him under Section VIII-A. Again, suppose a contribution of $100 per year, an employee who has worked for 20 years, and who wishes to leave. Under the company's interpretation he is entitled to benefits only if the company decides favorably (Section VIII-A). Under the appellant's interpretation, he is entitled to $2000 under Section VIII-E whether or not the company would grant a request under Section VIII-A.

the instant case where the employee had to accept the contract as written.

Finally, appellee's interpretation of the plan is inconsistent with the idea that pension benefits are rights which an employee has earned rather than gratuities given him by his employer. This "gratuity theory" is being discarded by our courts which at the same time are constricting the area within which administrative committees may exercise their total discretion. *Lowe v. Jones*, supra; *Russell v. Princeton Laboratories, Inc.*, supra; *Siegel v. First Pennsylvania Banking & Trust Co.*, 201 F. Supp. 664 (E.D. Pa. 1961) ; *Siegel v. First Pennsylvania Banking & Trust Co.*, 248 F. Supp. 249 (E.D. Pa. 1965). See *Garner v. Girard Trust Bank et al.*, supra.

While this result limits the applicability of Section VIII-A to relatively few situations—those in which an employee is over 60 and has worked for less than 10 years[5]—it is still consistent with the primary reason for having a company pension plan : to attract and hold employees. The initial decision is the employer's. Here an employee must work for 10 years before receiving full benefits After the 10 years have elapsed, the employer must depend on more subtle ties to keep its executives. The relationships an employee develops with his co-workers, inertia against change, and the company's promise of added benefits through additional future contributions to the pension fund all tend to influence an employee to remain with his company.

Since appellant's resignation is governed by Section VIII-E of the plan, the only remaining question is whether there were adequate grounds for the committee to consider appellant's resignation as resulting from disloyalty to the company. The appellee contends that

---

[5] Section VIII-A(4) applies only to employees over 59 and under 65. Once they have 10 years of service they are entitled to full benefits under Section VIII-E.

the only proper question before the trial judge was whether the committee abused its discretion and that since Section II-C of the plan states that any action taken in good faith by the committee shall be binding on all parties, the decision of the committee must be upheld.

However, as the Supreme Court stated in *Forrish v. Kennedy*, supra, at 376, "We cannot subscribe to the appellants' argument that the words 'full authority' are synonymous with the terms 'absolute discretion' or 'unlimited discretion'; even such terms do not give a trustee unfettered discretion in all instances." The courts can compel the trustees of a pension plan to exercise their discretion within the bounds of reasonable judgment. *Garner v. Girard Trust Bank*, supra; *Forrish v. Kennedy*, supra. The en banc court found that the appellant was not guilty of "disloyalty" under the terms of the plan and in view of the facts. We agree.

Appellee based its finding of disloyalty on the fact that the appellant left to work for a competitor. It appears to us that the real reason he left was because of his health: even so, appellee asks us to accept two weak "definitions" which he advances: (1) what is a "competitor", and (2) that working for one constitutes "disloyalty". Besides the fact that appellant did not have notice that resigning and subsequently working for a "competitor" would be considered "disloyal" to his company, the parties were in disagreement as to whether or not appellant's new employer really was in competition with appellee. The amount of actual competition appears to be slight.

In *Siegel v. First Pennsylvania Banking and Trust Co.*, supra, it was held that the plaintiff was wrongfully denied his pension plan benefits when an administrative committee held that going to work for a competitor was grounds for forfeiture under a clause which called for forfeiture if an employee had "intentionally done

any other act *materially inimical* to the interests of the company." (Emphasis added.) In *Garner v. Girard Trust Bank et al.,* supra, the plaintiff was denied his pension benefits for entering into competition with his previous employer. However, in that case, there was a specific clause which stated that pension benefits could be denied if an employee "entered into competition" with his old employer. The fact that a similar clause is missing in the Billy Penn pension plan makes it analogous to *Siegel.*

The decision denying the appellant pension benefits is reversed, and judgment is entered for the appellant in the amount of $23,259.23 plus interest from March 31, 1967.