408

## Makarewich v. A. P. Green Refractories Company

*Paul Auerbach*, for plaintiff.
*Thomas F. Heilmann*, for defendant.

HIRSH, J., July 19, 1973—On October 27, 1972, plaintiff filed a complaint in assumpsit against defendant alleging that plaintiff was entitled to pension payments under the terms of defendant's pension plan. On September 30, 1972, defendant answered plaintiff's complaint by denying plaintiff's allegations and further filed new matter alleging that, by virtue of the collective bargaining agreements which covered plaintiff's employment, he was foreclosed from recovery under defendant's pension plan. Both plaintiff and defendant now respectively move for summary judgment on a joint stipulated statement of the facts which has been filed of record.

Through the stipulations of counsel, the parties have agreed that the following facts are true and correct:

Plaintiff was hired by defendant as an hourly employe on April 4, 1957. On October 28, 1957, approximately six and one-half months later, plaintiff was laid off with numerous other employes because of a lack of work. On March 10, 1959, approximately 17 months after the layoff, defendant contacted plaintiff and invited him to return to work. Plaintiff worked continuously for defendant from March 10, 1959, until July 1, 1971, when he retired due to permanent and total incapacity.

The sole issue presented to the court by the parties' motions for summary judgment is whether plaintiff had the 15 years of "continuous service" with defendant necessary to qualify for a pension under the pension contract.

The pension contract has been in effect since September 14, 1967. Also, at all times during his employment with defendant, plaintiff was a member of Local Union 972, Eastern District No. 12, United Brick and Clayworkers of America, AFL-CIO, and, therefore, was subject to the collective bargaining agreement in force between defendant and said union. This agreement has been operative since September 14, 1966.

Having journeyed thus far, we may turn now to the pension contract itself. Section II, paragraph 4 provides:

"4. An employee . . . who becomes 'permanently incapacitated' with 15 or more years of Continuous Service shall be eligible for a pension commencing the first day of the month next following the day he is deemed to be 'permanently incapacitated.' "

Plaintiff is clearly "permanently incapacitated." The only question then is whether he has accrued 15 years

of "continuous service." Section IV of the pension plan defines "continuous service" as:

"(1) There shall be no deduction for any time lost which does not constitute a break in Continuous Service.

"(2) Continuous Service shall be broken by: . . .

"(d) Absence due to a layoff or a physical disability either of which continues for *more than two years, except as provided in any labor agreement relating to the Participant to which the Company is a party, . . .*" (Italics supplied.)

Plaintiff claims that he is entitled to a pension because his service period began on April 4, 1957, when first hired and ended 15 years later on April 4, 1972. Specifically, plaintiff argues that the "continuous service" period was not interrupted by the 17-month layoff of 1957 to 1959 because it was less than two years, and by his physical incapacity to work after July 1, 1971, because this incapacity occurred within two years of April 4, 1972, when plaintiff completed 15 years of continuous service.* Thus, under plaintiff's interpretation, he would make out the 15-year "continuous service requirement" and be entitled to his pension money.

Of course, defendant opts for a different interpretation of the pension contract, arguing that the collective bargaining agreement should be read into the pension plan contract so that the one-year period in the seniority section of the collective bargaining agreement modifies section IV, paragraph 1(2)(d), of the pension plan by reducing the two-year allowable absence to only one year. The collective bargaining agreement provides, in part, that:

---

* Again note that under section IV, paragraph 1(2)(d), an absence due to *physical disability* under two years is not a break in continuous service as defined by the pension contract. (Italics supplied.)

"5.1 Seniority shall mean the length of any employee's continuous employment with the Remmey Division, Philadelphia, Pennsylvania . . .

"5.14 Seniority shall TERMINATE:

"1. By reason of illness or absence from work for any reason, including layoff, . . . for a period of one (1) year." (Italics supplied.)

Therefore, defendant submits that plaintiff accumulated only 12 and one-third years of "continuous service" as that term is used in the pension plan, since the 17-month break in service following his layoff would have effectively tolled the accumulated "continuous service" period.

Before analyzing these arguments, we note initially those basic legal principles of interpretation of pension contract that will guide us in our task. A recent decision of the Superior Court (Levitt v. Billy Penn Corp., 219 Pa. Superior Ct. 499 (1971)), has summarized the law in this regard. The following two quotations give the essence of the Superior Court's summary and the relevant legal citations:

"Pension plan benefits are deferred compensation, not gratuities, even if the employee makes no contribution to the fund. Lowe v. Jones, 414 Pa. 466 . . . The employee has a contractual right to enforce the plan *according to its terms,* and such benefits may not be denied arbitrarily.": 219 Pa. Superior Ct. at 503. (Italics supplied.)

"Even if it is granted that there may be an alternative interpretation of the plan, *the construction most favorable to the employee must be adopted.* Forrish v. Kennedy [377 Pa. 370] supra; Diskin v. Police Pension Fund Assn., 367 Pa. 273 . . . As Chief Justice Weintraub of the New Jersey Supreme Court stated: 'The question, then, is whether the employee should suffer a *forfeiture of something he has earned. Forfeiture be-*

*ing disfavored we should take any tenable view of the indenture to avoid it.* Indeed, these plans are to be *liberally construed in favor of the employee.*' Russell v. Princeton Laboratories, Inc., 50 N. J. 30, 35, 231 A.2d 800, 803 (1967).

"There is also the basic rule that *any doubt or ambiguity in a contract must be construed against the party who drafted the contract.* See, e.g., Home Builders of Mercer County v. Dellwood Corp., 379 Pa. 255 . . . This is particularly applicable in the instant case where the employee had to accept the contract as written.": 219 Pa. Superior Ct. at 505 and 506. (Italics supplied.)

By employing the reasoning invoked in the Levitt decision, supra, it seems rather clear that defendant's interpretation of the pension contract must fail because plaintiff's interpretation is reasonable, would prevent forfeiture and would resolve the matter in favor of the party upon whom the ambiguous contract was imposed.

Moreover, this court feels compelled, as a matter of pure logic, to rebel against the interpretation that defendant put forth. It would appear clear, on fair appraisal, that it was never the intent of the parties that the seniority provision be a modification of the pension plan for either of the following reasons:

(1) The language of the collective bargaining agreement in regard to said seniority section predated the pension plan by at least one year. To say that the seniority section of the 1966 collective bargaining agreement modifies the subsequent 1967 pension plan would mean that the pension plan when written would have already been superseded by the prior labor contract. This court just can't believe that the two-year clause of the pension contract was meant to be nugatory on the day it was drafted.

2. The seniority clause refers to a break in "contin-

uous *employment,*" not "continuous *service*" as provided for in the pension contract in question. There is nothing to indicate these terms were meant to be read as synonymous, especially since there is an entire section in the pension contract designed to define this word for purposes of this pension contract.

Finally, even were we to assume that the two clauses were meant to be read together as defendant suggests, it would be of no avail to defendant as this court will not blind itself to the realities of the situation. The purpose of seniority provisions is to resolve questions of priority rights of employes to promotions and to jobs upon return to work after a layoff. They would clearly appear to have no application to a separately negotiated pension contract between the corporation and its employe. To hold otherwise would necessitate this court making a strained construction in order to impose a forfeiture on this plaintiff. This we will not do as it goes against all principles of law and fundamental justice.

Accordingly, it is, therefore, ordered and decreed (A) that plaintiff's motion for summary judgment be and the same hereby is granted; and judgment is hereby entered in favor of plaintiff against defendant; (B) that defendant's motion for summary judgment be and the same hereby is denied.