In re David B. WITTE, M.D., Debtor.

Bankruptcy No. HK 85 2474.

United States Bankruptcy Court,
W.D. Michigan.

Oct. 21, 1988.

James G. Vantine, Jr., Craig R. Bush, Miller, Canfield, Paddock and Stone, Kalamazoo, Mich., for debtor.

Bridget M. Rowan, Daniel M. Houlf, Tax Div., U.S. Dept. of Justice, Washington, D.C., for U.S.

Paul E. Davidoff, Stanley, Davidoff, and Gray, P.C., Kalamazoo, Mich., for trustee.

Steven L. Rayman, Walsh, Miller, Rayman and Langeland, James B. Ford, Zarbock and Ford, Kalamazoo, Mich., for Cheryl Fritz, Personal Representative of the Estate of Cynthia Brinks.

Mark Matus, Dept. of the Atty. Gen., Revenue Div., Lansing, Mich., Asst. Michigan Atty. Gen.

## OPINION

LAURENCE E. HOWARD, Bankruptcy Judge.

### ERISA QUALIFICATION AND THE BANKRUPTCY CODE

Originally, the debtor, David B. Witte, M.D., and the Trustee, Richard Remes, had filed a joint motion asking this court to determine under 11 U.S.C. § 505 that a distribution of $225,000 from the debtor's profit-sharing plan interest to the trustee and ultimately to an unsecured creditor would not deprive that plan or its participants of qualification under the Employee Retirement Income Security Act of 1974, 26 U.S.C. § 401, *et seq.*, ("ERISA"), nor result in taxable income under either Federal or State tax law to the debtor, the trustee, the estate, or the creditor. The motion has subsequently been pared down. At present, the sole issue is whether the filing of the bankruptcy petition disqualified the debtor's profit-sharing plan which was formerly qualified under ERISA. The United States contends that this court does not have jurisdiction over this question. Even if the court would otherwise have jurisdiction, the United States argues that this suit is barred by sovereign immunity. Should the court hold that it may consider the question, the United States has asked the court to abstain to allow the Internal Revenue Service to make its own determination as to whether the profit-sharing plan remains qualified under ERISA. If the court holds that it may consider the question and

declines to abstain, the United States asks the court to hold that the plan has been disqualified. The debtor contends that this court may decide the issue and urges the court to hold that the plan remains qualified under ERISA.

### FACTS

Dr. Witte incurred a pre-petition liability to the Estate of Cynthia Brinks. Dr. Witte then filed a petition under Chapter 7 of the Bankruptcy Code. The debtor sought to exempt his interest in the David B. Witte, M.D., P.C. ERISA-qualified profit-sharing plan ("Witte plan") under 11 U.S.C. § 522. (The plan participants are Dr. Witte and two staff members.) The trustee objected to this exemption. Cheryl Fritz, personal representative of the Estate of Cynthia Brinks, also objected and filed an adversary proceeding to determine nondischargeability of the debt, Adversary Proceeding Number 86–139 (Bankr.W.D.Mich.).

In order to settle all these matters, Dr. Witte, the trustee, and Cheryl Fritz all entered into a stipulation under which $225,000 of Dr. Witte's interest in the Witte plan were to be declared property of the estate and turned over to the trustee for eventual distribution to the Brinks Estate, the sole creditor in this case. The Brinks Estate in return agreed to drop all its claims and actions against Dr. Witte. The trustee also agreed to drop all his claims and action against Dr. Witte, and to pay whatever taxes might become due from the transaction. The debtor and the trustee then brought this motion which was eventually pared down to its present form.[1]

---

1. The relief originally sought for the Brinks Estate was apparently dropped in response to *MDFC Equipment Leasing Corporation v. Robbins (In the Matter of Interstate Motor Freight System)* 62 B.R. 805 (Bank.W.D.Mich.1986), in which this court held it did not have jurisdiction to hear the tax claims of anyone other than a debtor or an estate. The relief sought for the trustee was dropped when the trustee, in an amended stipulation, agreed to pay whatever taxes might become due from the transaction. This would appear to be in accord with 26 U.S.C. § 1398(f)(1) which provides that the transfer (other than by sale or exchange) of an asset from the debtor to the estate is not a taxable disposition and "the estate shall be treated as the debtor would be treated with respect to such asset." See also, *In the Matter of Kochell,* 804 F.2d 84 (7th Cir.1986). The trustee's agreement to pay these taxes rendered the debtor's request to be relieved of them moot. The parties however apparently do not understand nor intend the trustee's agreement to include the payment of any taxes that may later become due because of any disqualification of the formerly ERISA-qualified plan. The debtor's request for relief from any such taxes would therefore appear to remain viable.

## JURISDICTION

The United States contends that this court lacks jurisdiction to decide this question. The jurisdiction of the Bankruptcy Courts is founded upon 28 U.S.C. § 1334. Paragraph (b) of that section provides that:

> Notwithstanding any Act of Congress that confers exclusive jurisdiction on a court or courts other than the district courts, the district courts shall have original but not exclusive jurisdiction of all civil proceedings arising under title 11, or arising in or related to cases under title 11.

Under 28 U.S.C. § 157(a) the district court may refer all proceedings arising under title 11 or arising in or related to a case under title 11 to the bankruptcy judges of the district. The District Court of the Western District of Michigan has referred such matters to this court under Local Rule 65.

The question is whether the possible disqualification of this profit-sharing plan "arises in or is related to" Dr. Witte's case under title 11. The United States asserts not, contending that the disqualifying event was the invasion of the fund pursuant to the settlement between the debtor and the trustee. The United States maintains that this invasion therefore was a post-petition event unrelated to the title 11 case. The debtor disagrees, arguing that the invasion was not the settlement, but rather the very filing of the chapter 7 petition itself, and that that invasion does not disqualify the fund.

■ The filing of a bankruptcy petition under 11 U.S.C. § 301 creates a bankruptcy estate under 11 U.S.C. § 541. The estate is comprised of, *inter alia*, "all legal or equitable interests of the debtor in property as of the commencement of the case." 11 U.S.C. § 541(a)(1). That estate would also include all interests of the debtor in any ERISA-qualified profit-sharing plan which did not qualify for exclusion from the estate under § 541(c)(2) as a spendthrift trust under state law. *Chrysler–UAW Pension Plan v. Watkins (In re Watkins)*, No. K 87–381 CA 9, slip op. (W.D.Mich. July 1, 1988). Therefore, if the Witte profit-sharing plan does not meet the requirements of a spendthrift trust under Michigan law, then it was invaded by the filing of the Chapter 7 petition, and the subsequent settlement was merely a recognition of a previously existing situation. Such a result would argue strongly for jurisdiction. Conversely, if the Witte profit-sharing plan does meet the state law requirements for a spendthrift trust, then it survived the filing of the petition with its integrity intact, only to be violated when it was invaded pursuant to the settlement agreement. This result, according to the United States, would mean that the transfer and violation were post-petition events over which this court would have no jurisdiction.

■ I believe, however, that under either scenario this court would have jurisdiction. Assuming that the latter scenario is what actually happened, the mere fact that this was a post-petition event would not deprive this court of jurisdiction. Granted the connection of the violation to the bankruptcy case would be more attenuated than if the violation of the fund's integrity were occasioned by the bankruptcy filing itself. But it would not be so remote or attenuated as to lack any relation at all. In fact the connection between this settlement and the bankruptcy case is very close. The transfer of the $225,000 was made as a part of the settlement of litigation over the debtor's discharge and his exemptions. The concepts of discharge and exemption are fundamental to the Bankruptcy Code's goal of providing a fresh start to debtors. Obtaining the benefits of discharge and exemption is the primary reason many individuals file a bankruptcy petition. That settlement terminated litigation pending before this court. Had that litigation continued, this court may well have faced the question of whether to order an invasion of the Witte plan or not. ERISA-qualification and the effect of an invasion on that qualification would have been factors the court would have had to address. Had the court ordered that the debtor's share of the profit-sharing plan be paid to the estate, I believe it would have been quite proper, in-

deed inevitable, for the debtor to ask the court what ramifications such a decision held for the profit-sharing plan's ERISA qualification, and I think the court would have had to answer that question.

■ More fundamentally, as a matter of law, the former scenario, under which the debtor's interest in the profit-sharing plan became property of the estate upon the filing of the petition, is correct. As was noted above, if the profit-sharing plan did not meet the requirements of a spendthrift trust under Michigan law, then it became property of the estate upon the filing of the bankruptcy petition. As has been noted in *Watkins*, the Michigan Supreme Court has described a spendthrift trust as one

> created to provide a fund for the maintenance of the beneficiary and at the same time to secure it against his improvidence or incapacity. In a narrower and more technical sense, a spendthrift trust is one that restrains either the voluntary or involuntary alienation by a beneficiary of his interest in the trust, or which, in other words, bars such interest from seizure in satisfaction of his debts.

*Fornell v. Fornell Equipment, Inc.*, 390 Mich. 540, 548, 213 N.W.2d 172 (1973), quoting 54 Am Jur. *Trusts* § 148, p. 123 (1945). *Fornell* went on to note that:

> A person cannot however create a true spendthrift for himself. Public policy does not permit a man to place his own assets beyond the reach of his creditors. But a settlor is not precluded from transferring his own property in trust to protect himself against his own improvidence.
>
> > "Such a trust is binding on him except insofar as it is still within his power to alien or encumber it with debts, ..."

390 Mich. at 548, quoting 54 Am Jur. *Trusts* § 166, p. 135 (1945). We must compare the provisions of the Witte plan with these standards.

The Witte plan does not meet the standards of a spendthrift trust. True, section 9 of the plan provides in part, that, "no benefit or interest available hereunder will be subject to assignment or alienation, either voluntarily or involuntarily." How-ever, that language is undercut by section 4.4 which states that loans may be made to any participant on certain conditions, including the requirement that no loan shall exceed the present value of the participants vested accrued benefit derived from other than employee deductible contributions, nor shall the aggregate of all loans to a participant exceed "the sum of the employee contributions and the lesser of (a) $50,000, or (b) one-half the non-forfeitable portion of the participant's account balances or, if greater, $10,000," and no loan shall be foreclosed until a distribution is made to the participant. Furthermore, section 4.4 provides that, "An assignment or pledge of any portion of the Participant's interest in the Plan and a loan, pledge or assignment with respect to any insurance contract purchased under the Plan will be treated as a loan under this paragraph." That is, an assignment of the participant's share in the plan will be considered a loan which need not be repaid until a distribution is made to that participant, at which time the participant's distribution will presumably be reduced correspondingly. The cumulative import of these provisions is that a plan participant may indeed alienate his plan benefits. Therefore, this plan is not a trust which "restrains either the voluntary or involuntary alienation by a beneficiary of his interest in the trust." *Fornell*, 390 Mich. at 548, 213 N.W.2d 172.

Nor is there any provision in the Witte plan giving to the plan trustee any discretion over the timing or the amount of any distribution. Without such discretion in the plan trustee, it cannot be said that the Witte plan is one "created to provide a fund for the maintenance of the beneficiary and at the same time to secure it against his improvidence or incapacity." *Id.*

Lastly, *Fornell* notes that although a settlor may not, as a matter of public policy, place his assets beyond the reach of his creditors, he may transfer his assets in trust to protect himself and is bound by that trust except insofar as it is still within his power to alien or encumber the assets. Under the Witte plan participants make contributions to the plan, and have the

power to alienate or pledge their assets. Such a trust is not a spendthrift trust under Michigan law.

Dr. Witte's interest in the Witte plan, therefore, was not excluded from the estate under § 541(c)(2), and consequently it became an asset of the estate at the filing of the bankruptcy petition. The filing of the petition alienated this interest from Dr. Witte; the settlement merely restored some portion of that interest to him. If the invasion of the plan is a taxable or disqualifying event, then those results are not pre-petition or post-petition liabilities, but instead are liabilities incident to the filing of the petition itself. If such liabilities exist, they and the bankruptcy case exist consubstantially, both of them created by the filing of the bankruptcy petition. I cannot believe that a bankruptcy court does not have jurisdiction over the possible ramifications of the filing of a bankruptcy petition.

## SOVEREIGN IMMUNITY

■ If the Witte plan has been disqualified, it is because the invasion of the plan triggered by the filing of the bankruptcy petition shattered the integrity of its non-alienation provision. Upon the settlement and division of Dr. Witte's interest in the plan, the balance of his interest flowed back into the plan. However, if the Witte plan is now disqualified, this balance did not pour back into an intact plan; instead, it would have been poured into a shattered plan which could not shield the balance from taxes on the future income it will generate, nor provide a tax-free haven to future deposits. In essence, then, a decision as to whether this plan is disqualified or not is a decision as to whether its assets may be taxed to the debtor. Section 505(a) of the Bankruptcy Code provides that, with exceptions here irrelevant,

> the court may determine the amount or legality of any tax, any fine or penalty· relating to a tax, or any addition to tax, whether or not previously assessed, whether or not paid, and whether or not contested before and adjudicated by a judicial or administrative tribunal of competent jurisdiction.

Section 106(c) of the Code provides that:

> Except as provided in subsections (a) and (b) of this section and notwithstanding any assertion of sovereign immunity—
> (1) a provision of this title that contains "creditor," "entity", or "governmental unit" applies to governmental units: and
> (2) a determination by the court of an issue arising under such a provision binds governmental units.

Under these two sections the United States has waived it sovereign immunity as to this action.

True, nowhere in § 505(a) are the words "creditor," "entity," or "governmental unit" used. However, taxes are by definition owed to governmental units. Congress would not have included § 505(a) in the Bankruptcy Code unless it meant bankruptcy courts to decide tax questions. This conclusion is buttressed by the legislative history of § 106, which explains that:

> Section 106(c) codifies *In re Gwilliam* *[Gwilliam]*, 519 F.2d 407 (9th Cir.1975), and *In re Dolard*, 519 F.2d 282 (9th Cir.1975), permitting the bankruptcy court to determine the amount and dischargeability of tax liabilities owing by the debtor or the estate prior to or during a bankruptcy case whether or not the governmental unit to which such taxes are owed files a proof of claim.

124 Cong. Rec. 32,394 (1978). In *Dolard* the Ninth Circuit held that:

> the absence of a prior IRS claim, notice of deficiency or assessment does not impede or vitiate the jurisdiction of the Bankruptcy Court ... to hear and determine the amount or legality of any unpaid federal income taxes accruing after bankruptcy.

519 F.2d at 286. *See also, Neavear v. Schweiler (In re Neavear)*, 674 F.2d 1201, 1204 (7th Cir.1982).

Admittedly, *Dolard* involved a tax which might have accrued against the estate during the administration of the estate. Application of this waiver to litigation over post-petition taxes incurred by the debtor and

unrelated to the bankruptcy case might present a different question. However, Dr. Witte's possible post-petition tax liability was incurred in the very filing of his chapter 7 petition. Far from being unrelated to his chapter 7 filing, it is intimately related to it, as has been noted in the jurisdictional discussion above. Furthermore, as the Supreme Court has noted, the Congressional waiver of sovereign immunity is to be liberally construed. *United States v. Shaw*, 309 U.S. 495, 501, 60 S.Ct. 659, 661–62, 84 L.Ed. 888 (1940).

For these reasons, the United States may not raise its sovereign immunity as a defense to this action.

## ABSTENTION

■ The IRS has also asked the court to abstain in order to allow the IRS to make its own determination as to the qualification of the plan. Under 28 U.S.C. § 1334(c)(1) this court may abstain "in the interest of justice." I do not see how the interests of justice will be served by abstention. The debtor has sought relief from this court and is entitled to a decision as to whether or not he is entitled to the relief he seeks. The IRS has asked for abstention in order to allow it to determine for itself whether the Witte plan remains qualified. However, it would appear that the IRS has already made a determination, for it has adamantly maintained throughout this proceeding that the invasion of the Witte plan has violated the plan's prohibition against alienation, which thereby cost the plan its ERISA-qualified status. Admittedly, the usual IRS disqualification procedures have not been followed. In fact, I am unaware of any pending judicial or administrative proceeding to which I could defer. Were I to abstain, it might be years before the debtor learns whether his profit-sharing plan remains ERISA-qualified, if ever. By that time, the debtor may find that if the plan has been disqualified he has accrued a far greater tax liability than he would have had he learned of that result today.

## ERISA QUALIFICATION

■ As to the ultimate question, qualification under ERISA, the IRS contends that the invasion of the Witte plan constitutes an alienation of fund assets in violation of 26 U.S.C. § 401(a)(13), by which violation the Witte fund has lost its ERISA qualification. The debtor disagrees, relying upon *In re DeWeese*, 47 B.R. 251, 12 C.B.C.2d 404 (Bankr.W.D.N.C.1985) which analyzed the situation as follows:

That the Bankruptcy Code calls for the inclusion of ERISA benefits as estate property does not result in a loss of tax-exempt status for this or other ERISA-qualified pension funds nor taxability to their beneficiaries. While implicit repeals of statutes are not favored where avoidable, in this area ERISA (I.R.C. § 401) and § 541 of the Bankruptcy Code irreconcilably conflict. As such, the latter in time prevails over the former ... Congress passed the Bankruptcy Code in 1978; ERISA was enacted previously in 1974. And, where the two conflict, the Code is controlling. This, in effect, means the ERISA anti-alienation clause is implicitly repealed as regards bankruptcy. As noted in § 522 of the Code, Congress acknowledged certain exemptions were dependent on ERISA-qualification and tax-free status. It would be obtuse then to consider these tax benefits which are required for exemption *out* of the estate to be lost because the property interest was a *part* of the estate.... Therefore, that these interests become estate property when a beneficiary files bankruptcy in no way impairs the tax-free status of the underlying ERISA plan or affects its beneficiaries as regards the same.

47 B.R. at 256, 12 C.B.C.2d at 409. I would agree with *DeWeese* that § 522 is a very strong argument in favor of the continued ERISA-qualification of a plan despite the filing of a bankruptcy petition by the beneficiary.

I disagree, however, with the *DeWeese* analysis. A conflict between the Internal Revenue Code and the Bankruptcy Code cannot be presumed. Nor, if such a conflict exists, do I believe that the Bankrupt-

cy Code prevails simply because it was enacted in 1978. The proper analysis is to determine whether the two statutes can be construed so as to avoid any conflict, and if such a way cannot be found, then decide upon a resolution which will do the most to serve the congressional intent expressed in both statutes and will least undercut that intent as expressed in either one. *In re Jenkins*, 58 B.R. 702, 705 (Bank.W.D.Mich. 1986), *aff'd sub nom. Michigan Employment Security Commission v. Jenkins*, 64 B.R. 195 (W.D.Mich.1986).

In order to determine whether § 401 and § 541 conflict, we have to look to the language of § 401. Section 401 sets forth the requirements a profit-sharing plan must meet in order to be qualified under ERISA. Section 401(a)(13) states that:

> A trust shall not constitute a qualified trust under this section unless the plan of which such trust is a part provides that benefits provided under the plan may not be assigned or alienated ... For purposes of this paragraph a loan made to a participant or beneficiary shall not be treated as an assignment or alienation if such loan is secured by the participant's accrued nonforfeitable benefit and is exempt from the tax imposed by section 4975 (relating to tax on prohibited transactions) by reason of section 4975(d)(1).

As has been noted above, the Witte plan provides that all pledges or assignments of an interest in the plan shall be treated as a loan. Therefore, if this transfer to the trustee was treated by the plan as a loan, properly secured, and if the transfer is exempt under section 4975(d)(1) then § 401(a)(13) has not been violated, there is no conflict between the Internal Revenue Code and the Bankruptcy Code, and the Witte plan remains ERISA-qualified.

Section 4975(a) imposes a tax on each prohibited transaction. Section 4975(c) defines a "prohibited transaction" as, *inter alia*, "any direct or indirect ... lending of money or other extension of credit between a plan and a disqualified person." "Disqualified person" is defined at § 4975(e)(2) as *inter alia*, an owner of more than 50 per

cent of the stock voting power, capital interest, profit interest or beneficial interest of the employer which created the plan, or in a corporation, partnership or trust which owns the employer, or an officer, director, highly compensated employee or a 10 per cent or more shareholder of such. I do not know who "owns" David B. Witte, M.D., P.C., the employer who created the Witte plan, but I suspect that the debtor, Dr. David Witte, is the likeliest candidate. A loan to him might therefore be a prohibited transaction, and thereby a violation of § 401(a)(13) with all that that entails, unless Dr. Witte qualified for the exemption found at § 4975(d)(1).

Section 4975(d)(1) exempts from the prohibited transaction tax

> any loan made by the plan to a disqualified person who is a participant or beneficiary of the plan if such loan—
>
> (A) is available to all such participants or beneficiaries on a reasonably equivalent basis,
>
> (B) is not made available to highly compensated employees, officers, or shareholders in an amount greater than the amount made available to other employees,
>
> (C) is made in accordance with specific provisions regarding such loans set forth in the plan,
>
> (D) bears a reasonable rate of interest, and
>
> (E) is adequately secured.

These are all factual questions which the parties have not introduced any proofs on. Lacking a record upon which to answer them, I cannot determine whether this transaction was exempt from tax under § 4975(d)(1).

## CONCLUSION

An evidentiary hearing will have to be held to determine whether the transaction was a loan which meets the requirements of § 401(a)(13), which are that the loan be secured by the participant's accrued nonforfeitable benefit, and that it be exempt under § 4975(d)(1) from the tax imposed by § 4975(a). Since the parties have not addressed the balancing approach I adopted

in *Jenkins,* based on *N.L.R.B. v. Bildisco and Bildisco,* 465 U.S. 513, 104 S.Ct. 1188, 79 L.Ed.2d 482 (1984), they should also brief the question of resolving a conflict between the two Codes, if necessary, upon that principle.